UNITED STATES of America, Appellee,

v.

John Reginald ROHRBACH, Appellant.

No. 86–1724.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 14, 1986.

Decided March 5, 1987.

Steven R. Davis, North Little Rock, Ark., for appellant.

Linda Lipe Gleghorn, Asst. U.S. Atty., Little Rock, Ark., for appellee.

Before McMILLIAN, ARNOLD, and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

John Reginald Rohrbach appeals from his criminal conviction, contending that the District Court erred by denying his motion to suppress oral statements made by him to special agents of the Federal Bureau of Alcohol, Tobacco and Firearms (ATF). The statements in question were admitted into evidence at Rohrbach's trial, and he was convicted under 18 U.S.C. §§ 922(a)(6) and 924(a) on two counts of making a false statement with respect to a fact material to the lawfulness of the sale of a firearm. For reversal, he argues that the statements should have been suppressed because they were not voluntary and because he did not knowingly and intelligently waive his constitutional right to remain silent. We affirm.

Rohrbach was arrested by Arkansas authorities on state charges on August 25, 1985, as he was leaving a store from which he had purchased a gun. Rohrbach was taken to the Craighead County Jail and then transferred approximately 100 miles to the Cleburne County Jail. Ten days later, on September 4, 1985, while still in the custody of the state, Rohrbach was questioned by federal Special Agents Denny Reynaud and John Ford of ATF. Before questioning Rohrbach, the special agents advised him of the nature of the possible charges and of his constitutional rights to remain silent and to have an attorney. Ford read to Rohrbach ATF Form 3200.4, which contains a statement of *Mi-*

*randa* rights and a waiver of those rights. Both Rohrbach and the agents signed the form and Ford added the date and time of the signatures. During the ensuing interrogation, Rohrbach made oral statements, admitting that on two occasions in August 1985 he purchased firearms and that on both occasions he knowingly made false statements by denying in writing that he ever had been convicted of a felony. (In fact, Rohrbach had several prior felony convictions.) He refused to give the agents a written statement. At no time, however, did he ask for an attorney or in any way invoke his right to counsel.

In December 1985, Rohrbach was indicted by federal authorities on the charges of which he now stands convicted. In May 1986, a pre-trial hearing was held by the District Court and Rohrbach's motion to suppress was denied. The court found that Rohrbach gave his statements to the ATF agents voluntarily after making an uncoerced, knowing, and intelligent waiver of his *Miranda* rights. A jury trial then was held, the statements were admitted into evidence, and Rohrbach was found guilty, receiving concurrent five-year sentences on each of the two counts and a fine of $50.

Rohrbach contends that his incriminating statements were not made voluntarily, and that the District Court erred as a matter of law in finding to the contrary. "The voluntariness of a confession is a legal inquiry subject to plenary review by the appellate courts." *United States v. Wilson,* 787 F.2d 375, 380 (8th Cir.1986) (citing *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 452, 88 L.Ed.2d 405 (1985)), *cert. denied,* —— U.S. ——, 107 S.Ct. 197, 93 L.Ed.2d 129 (1986). To determine if a confession is voluntary, this Court will look at the totality of the circumstances, examining the tactics used by the police, the details of the interrogation, and any characteristics of the accused that might cause his will easily to be overborne. *Rachlin v. United States,* 723 F.2d 1373, 1377 (8th Cir.1983).

■ We note that in *Colorado v. Connelly,* —— U.S. ——, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986), the Supreme Court recently held that "coercive police activity is

a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." In *Connelly,* the Court ruled admissible a confession that was the product of a psychosis rather than the product of coercive tactics by the police. The Court observed that "the Fifth Amendment privilege [against self-incrimination] is not concerned 'with moral and psychological pressures to confess emanating from sources other than official coercion.'" *Id.* 107 S.Ct. at 523 (quoting *Oregon v. Elstad,* 470 U.S. 298, 305, 105 S.Ct. 1285, 1291, 84 L.Ed.2d 222 (1985)). We read *Connelly* as establishing that an incriminating statement cannot be found "involuntary" in the constitutional sense unless it is established that the police extorted it from the accused by means of coercive activity.

■ Because Rohrbach has not proved, or even alleged, any coercive activity by the ATF agents who interrogated him, we must reject, under *Connelly,* his claim that his incriminating statements to the agents were made involuntarily. His argument is not that the agents (or anyone else, for that matter) used coercive tactics, but that his personal characteristics, including minimal formal education and a history of alcohol and drug abuse and of suicide attempts, are indicative of an easily overborne will. That argument is legally indistinguishable from the argument unsuccessfully advanced by the defendant in *Connelly.* Although we believe that personal characteristics such as those on which Rohrbach relies would be relevant to the voluntariness issue once coercive police activity has been shown, *Connelly* makes it clear that such personal characteristics of the defendant are constitutionally irrelevant absent proof of "coercion brought to bear on the defendant by the State." 107 S.Ct. at 522.

■ Moreover, even if we were to put the *Connelly* decision aside and give full consideration to the evidence concerning Rohrbach's personal characteristics, we still would conclude that the District Court's determination of voluntariness should not be disturbed. The District Court heard the testimony of Rohrbach and

of other witnesses at the suppression hearing, evaluated that testimony, and found that Rohrbach's incriminating statements had been made voluntarily. Having reviewed the transcript of the suppression hearing, we see no reason to overturn this determination by the able District Judge, who heard the witnesses and who necessarily evaluated their relative credibility and persuasiveness. Rohrbach's claim that psychosis and drug dependency caused his will to be overborne implicitly was rejected by the District Court, which found that Rohrbach's statement was "made without any coercion or duress at all." Transcript (Tr.) at 62. In making this determination, the court had before it the testimony of a court-appointed psychiatrist who stated that Rohrbach displayed "no evidence of ongoing psychosis." Tr. at 46. Moreover, testimony established that during the ten-day period between his arrest and questioning, Rohrbach no longer had access to drugs. In addition, the ATF agents testified that Rohrbach was lucid and able to communicate at the time of the interrogation. On the record before us, we cannot say that the District Court erred in any of its factual findings or as a matter of law in concluding that Rohrbach's statements were voluntary.[1]

■ Rohrbach also contends that his refusal to sign a written statement may indicate that he did not understand that his oral statements could be used against him, despite his having signed a waiver form acknowledging that he understood his rights. In support of this contention, Rohrbach relies on *Frazier v. United States*, 419 F.2d 1161 (D.C.Cir.1969), in which the court speculated that if Frazier, who talked freely but directed the interrogating officer not to take any notes, was brooding over a guilty conscience while the *Miranda* warnings were being given he may have failed to perceive their import. In the present case, however, we have no reason even to consider engaging in such speculation. The District Court unequivocally found that Rohrbach's statements were not only "free" and "voluntary," but also "understandingly made." Tr. at 62. These findings are well supported by the record, which reveals that Rohrbach, who was 24 years of age at the time of his interrogation by the ATF agents, is no stranger to the criminal justice system. Indeed, he has a history of reform school, arrests, and convictions. There has been no showing that he lacks intelligence, or that he was anything but calm and rational at the time of his interrogation. Rohrbach's prior experience thus strongly buttresses the District Court's determination that he was aware that his oral statements could be used against him and that he understood the significance of signing a waiver of rights form.[2]

---

1. Our conclusion is not altered by Rohrbach's argument that when the ATF agents interrogated him he had not yet been arraigned on the state charges for which he was in state custody. We note that little was made of this argument at the suppression hearing. Indeed, it was so inadequately developed that at the end of the suppression hearing the District Court expressed its impression that Rohrbach had been convicted on the state charges and was simply awaiting transportation to the Department of Correction at the time of the interrogation. Tr. at 61. But even granting the factual premise that Rohrbach had been in custody on state charges for ten days without arraignment, his argument fails, for he has not shown any causal nexus between any delay in his arraignment on the state charges and his incriminating statements to the ATF agents. He has simply asserted that there was such a delay. On this record, we are satisfied that this delay, if in fact it occurred, had no bearing on the voluntariness of Rohrbach's statements to the ATF agents. *See United States v. Jackson,* 712 F.2d 1283, 1285–87 (8th Cir. 1983).

2. The Supreme Court recently has held that a suspect's rights under the United States Constitution are not infringed by the admission of his oral confession obtained after he has agreed to talk about the crime in question but has refused to give a written statement without his lawyer being present. *Connecticut v. Barrett,* —— U.S. ——, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987). Barrett's argument (that he did not realize that his oral statements could be used against him) was essentially the same argument that Rohrbach has advanced here. The Court observed that it has never "'embraced the theory that a defendant's ignorance of the full consequences of his decisions vitiates their voluntariness.'" *Id.* at ——, 107 S.Ct. at 833 (quoting *Oregon v. Elstad,* 470 U.S. at 316, 105 S.Ct. at 1297). Rohrbach, of course, labors under the added difficulty that, unlike Barrett, he never in any way invoked his right to counsel, but merely refused to give a written statement.

We conclude that the District Court did not err in denying Rohrbach's motion to suppress. Accordingly, his conviction is affirmed.