UNITED STATES of America, Plaintiff,

v.

Daniel DZIALO, Defendant.

No. 90–CR–81062–DT.

United States District Court,
E.D. Michigan.

Sept. 13, 1991.

Joseph Allen, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

Richard R. Nelson, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

### I.

This matter is before the Court on defendant Daniel Dzialo's Fed.R.Crim.P. 12(b)(3) motions to suppress evidence. Defendant alleges the following: (1) that a search warrant issued for and executed on his residence and vehicle was without probable cause; (2) that the State of Michigan arrest warrant executed on June 5, 1989 was without probable cause; (3) that during the

execution of both the search and arrest warrants, police officers promised defendant that anything said would not be used against him and all that transpired would be "off the record"; and (4) that defendant suffers from Tourette's Syndrome, thereby causing him to "involuntarily blurt out matters that are contained in his mind." Defendant thus asks this Court to suppress any and all statements made and evidence seized as involuntary or illegally obtained.

On August 27, 1991, this Court held an evidentiary hearing to resolve the issues raised in defendant's motions. Therein, two witnesses testified: Richard Kalm, a detective with the Macomb County Sheriff's Department, and Daniel Dzialo, the defendant.

Having presided over the hearing and after reviewing the motions, response and file, this Court concludes that, for reasons discussed below, defendant's motions are denied.

## II.

During the evidentiary hearing, this Court had an opportunity to consider, and did consider, each witness's ability and opportunity to observe the facts and events to which he testified; each witness's memory and manner while testifying; each witness's interest, bias or prejudice; and the reasonableness of each witness's testimony considered in light of all the evidence admitted. Based on the aforementioned considerations, this Court finds no reason to question the credibility, veracity, and believability of Detective Kalm's testimony.

## III.

On April 20, 1988, a state magistrate issued a search warrant for defendant's home and vehicle. The warrant was executed by the County of Macomb Enforcement Team the same day. Among the items seized were a semi-automatic pistol with an obliterated serial number, safety deposit box keys, various records and telephone books, IRS tax returns, and over $8,000 in cash. As a result of the pistol's seizure, a state criminal complaint was issued in defendant's name on April 13, 1989.

The defendant was subsequently arrested on June 5, 1989 and charged with willfully altering the pistol's serial number contrary to Michigan law. M.C.L. § 750.230. On August 7, 1989, a state court dismissed this complaint.

On March 28, 1991, however, defendant was indicted by a federal grand jury charging that he conspired with others to distribute cocaine. A warrant was issued for defendant the following day.

## IV.

### A. The Search of Defendant's Home and Vehicle

■ Defendant has moved this Court to suppress all evidence seized as a result of the search of his home and vehicle. He contends that the state magistrate's determination of probable cause to believe that evidence of narcotics or narcotics transactions would be found in his home and vehicle was unjustified. Defendant thus concludes that the search was unreasonable and, consequently, violative of the Fourth Amendment. If defendant is correct, the Fourth Amendment exclusionary rule might bar the use of all evidence seized and statements made pursuant to the search in the prosecution's case in chief. *United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980). This Court finds, however, that the state magistrate had a "substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1982).

A determination of probable cause turns on the assessment of probabilities in particular factual contexts. *Id.* at 232, 103 S.Ct. at 2329. While the United States Supreme Court has not attempted to fix some numerically precise degree of certainty corresponding to "probable cause," it has made clear that "only the probability, and not a prima facie showing, of criminal activity is the standard...." *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590–91, 21 L.Ed.2d 637 (1969). Thus, "[t]he task of the issuing magistrate is simply to make a practical, common sense decision

whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. The duty of the reviewing court is only to ensure that the magistrate had a "substantial basis" for so concluding. *Id.* It is within these parameters that this Court addresses defendant's motion.

The affidavit in this cause is clearly sufficient to establish a "substantial basis" from which the magistrate could conclude that evidence of illegal activity could be obtained from defendant's residence and vehicle. The affidavit's more notable points include an informant's statements, as related by the affiant, that defendant had quoted him prices for kilos of cocaine and, in fact, had given him a sample. This sample, according to the affidavit, tested positive for cocaine. The affidavit also states that a trash search was conducted at defendant's residence which further indicated that drug transactions had occurred therein. Items discovered included plastic baggies that also tested positive for cocaine. Thus, at the very least, the affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon,* 468 U.S. 897, 923, 104 S.Ct.

3405, 3421, 82 L.Ed.2d 677 (1984). Consequently, even if this Court found that the affidavit provided an insufficient basis for the warrant, the exclusionary rule would nonetheless be inapplicable. *Id.* Defendant's motion to suppress evidence on the grounds that the search warrant was issued without probable cause is thus denied.[1]

### B. *Defendant's Arrest*

■ Among several items seized during the April 20, 1988 search of defendant's residence was a semi-automatic pistol with an obliterated serial number. Based on this seizure, a warrant for defendant's arrest was authorized on June 2, 1988. On April 13, 1989, a state complaint was issued in defendant's name charging that he was in violation of M.C.L. § 750.230. This statute makes it unlawful to willfully alter or obliterate a handgun's serial number. Defendant was arrested June 5, 1989. On August 7, 1989, a state court dismissed the complaint.

Defendant contends that the warrant for his arrest was issued without probable cause. Specifically, defendant claims that "the officers had no evidence that he willfully altered, removed or obliterated the serial number on the gun."[2] Moreover, defendant asserts that his arrest was a mere subterfuge, and only effectuated to

---

1. Defendant cites this Court to *United States v. Stevens,* 543 F.Supp. 929 (N.D.Ill.1982), apparently for the proposition that during the execution of a search warrant, it is impermissible for police officers to question those persons on the premises. While the government has not addressed this point in its response, defendant has clearly misread *Stevens.* Therein, an Illinois federal district court excluded statements by a defendant made during the execution of a search warrant. However, that court's analysis did not turn on the theory that questioning during a search is *per se* impermissible. Rather, the court found that the questioning went beyond basic identification information and amounted to custodial interrogation. Thus, the court concluded that absent *Miranda* warnings, defendant's statements must be excluded. *Id.* at 944. In the instant case, this Court finds that, based on Detective Kalm's testimony, defendant was properly *Mirandized* prior to any questioning. Consequently, defendant's efforts to sup-

press statements made during the search must rest entirely upon his claims that they were involuntary due to Tourette's Syndrome, or were made after officers allegedly promised that anything said would be "off the record." These points will be considered in this opinion.

2. M.C.L. § 750.230 provides that mere possession of a handgun with an obliterated serial number is presumptive evidence that the possessor has obliterated the same. However, the Michigan Supreme Court found this statutory presumption unconstitutional in 1978. *People v. Moore,* 402 Mich. 538, 266 N.W.2d 145 (1978). Thus, despite the government's assertions to the contrary, the "change in law" occurred well before the issuance of any warrant in the instant case. With or without the statutory presumption, however, and as further outlined in this opinion, the state magistrate had a "substantial basis" for concluding that defendant had violated said statute.

permit police officers to ask defendant about narcotics transactions. Defendant thus contends that his arrest was illegal, thereby barring the admission into evidence of any and all statements made subsequent to his arrest. This Court is not persuaded.

As previously noted, a reviewing court will uphold a magistrate's probable cause determination as long as the magistrate's conclusion has a "substantial basis...." *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. While defendant's mere possession of the pistol would not, in and of itself, establish that he willfully altered the serial number, "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Spinelli,* 393 U.S. at 419, 89 S.Ct. at 590–91 (citations omitted). The fact that the pistol was seized from defendant's residence would, at the very least, establish a "fair probability...." *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. The Court thus finds that the state magistrate had a substantial basis for issuing an arrest warrant on the gun charge. Defendant's motion to suppress evidence on the grounds that the arrest warrant was issued without probable cause is thus denied.[3]

### C. *Whether Officers Promised Defendant That Everything Was "Off the Record"*

Defendant asserts that during the execution of both the search and arrest warrants, police officers promised him that anything said would not be used against him and all that transpired would be "off the record." Furthermore, defendant claims that on neither occasion was he given his *Miranda* rights. Finally, defendant contends that following his arrest, officers threatened to jail him for the weekend and tell cellmates that he was a "snitch," so as to induce him to make statements incriminating himself and others. Defendant thus moves this Court to suppress all statements made during the search and after his arrest.

In response, the government offered testimony from Detective Kalm. Kalm testified that he was present and a participant in both the search of defendant's residence and in defendant's subsequent arrest. On both occasions, according to Kalm, defendant was fully apprised of his *Miranda* rights, acknowledged his understanding thereof, and expressed a desire to cooperate prior to any interrogation. This, of course, directly contradicts defendant's assertions. Moreover, Kalm testified that the officers neither stated that everything that transpired was "off the record" nor did they threaten to put defendant in physical peril.

Faced with the conflicting evidence, this Court is obliged to make a determination of the facts based on the credibility of the respective witnesses at the August 27, 1991 evidentiary hearing. As noted above, this Court finds no reason to question Detective Kalm's credibility, veracity and believability. The Court thus concludes that defendant was properly *Mirandized* prior to any custodial interrogation during the search and after his arrest; that defendant acknowledged his understanding of his rights and expressed a desire to cooperate; and that officers neither promised defendant that anything said was "off the record" nor threatened defendant with physical peril should he refuse to cooperate.

■ The remaining question is whether defendant "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966) (citations omitted). While a valid waiver is not presumed from a defendant's silence after warnings are given, or from the fact that statements were even-

---

**3.** Defendant's contention that his arrest on the gun charge was effectuated merely to permit officers to question him regarding drug transactions is without merit. Indeed, as defendant admits, the state of Michigan proceeded against defendant on said charge until dismissed by a state court for lack of evidence. Moreover, defendant has not and cannot cite this Court to any authority for the proposition that, following a valid arrest, official inquiries are limited to the matter at hand.

tually obtained, an express statement that a defendant is willing to cooperate with officials is sufficient. *Id.* That is precisely the case here. Defendant's motion to suppress evidence on the above grounds is thus denied.

### D. Defendant's Tourette's Syndrome

■ Defendant's final motion concerns his affliction with Tourette's Syndrome (TS). Defendant claims that TS causes him to "uncontrollably and involuntarily blurt out matters that are contained in his mind." Defendant thus asserts that his statements[4] to police officials were involuntary, thereby requiring that they be suppressed. Again, this Court disagrees.

The diagnostic criteria for TS, as operationally defined in the *Diagnostic and Statistical Manual of Mental Disorders* (DSM–III), are: (1) age of onset 2 to 15 years; (2) presence of recurrent, involuntary, repetitive, rapid, purposeless motor movements affecting muscle groups; (3) multiple vocal tics; (4) ability to suppress movements voluntarily for minutes to hours; (5) variations in the intensity of the symptoms over weeks or months; and (6) duration of more than one year. William J. Weiner, M.D., et al., *Movement Disorders: A Comprehensive Survey*, 533 (1989).[5] Behavioral abnormalities associated with TS include attention-deficit disorder, hyperactivity, obsessive-compulsive disorders, and impulsive and antisocial behavior. *Id.* at 540–41, 86 S.Ct. at 1662. Nothing in the relevant literature, however, establishes

that TS might cause its victims to confess to criminal activity.

But, even assuming TS somehow impaired defendant's cognitive or volitional capacity, this is not sufficient, by itself, to permit this Court to conclude his statements were involuntary for purposes of due process. *United States v. Newman,* 889 F.2d 88, 94 (6th Cir.1989). Rather, threshold to this determination is the requirement that the police "extorted [the statements] from the accused by means of coercive activity." *McCall v. Dutton,* 863 F.2d 454, 459 (6th Cir.1988) (citing *United States v. Rohrbach,* 813 F.2d 142, 144 (8th Cir.1987)). Once it is shown that the police activity was objectively coercive, the Court needs to examine defendant's subjective state of mind to determine whether the "coercion" in question was sufficient to overbear his will. *Id.* (citations omitted). Finally, defendant must establish that his will was in fact overborne because of the coercive activity. *Id.* That is, unless the police misconduct was the "crucial motivating factor" in defendant's implication of himself and others, his statements cannot be suppressed. *Id.*

This Court previously determined that during both the search of defendant's home and following his arrest, defendant was properly *Mirandized;* acknowledged an understanding of his rights; and informed police of his desire to cooperate. Moreover, it was found that officers never promised to keep defendant's statements "off the record" or threatened him with physical peril. Thus, defendant has failed to prove

**4.** During the April 20, 1988 search and ensuing interrogation, Detective Kalm testified that defendant was not simply responding affirmatively to pointed questions. Rather, defendant implicated himself and others in specific detail. Indeed, he had sufficient cognizance to describe his condition to officers lest they think him belligerent or attempting to reach a weapon. Defendant also identified persons previously unknown to police as participants in a drug distribution network. Consequently, defendant cannot merely be said to have been symptomatically answering "yes" to official inquiries.

**5.** The following sources, to which this Court has limited its inquiry, have been proffered by defendant in support of this motion: Ruth D. Bruun, M.D., et al., *Tourette Syndrome: A Look*

*At the Interface Between TS and the Law* (1987); Roger Kurlan, M.D., *Tourette's Syndrome: Current Concepts,* 39 Neurology 1625 (1989); and William J. Weiner, M.D., et al., *Movement Disorders: A Comprehensive Survey* (1989). At the evidentiary hearing, defendant had the opportunity, but chose not to offer medical testimony regarding the nature of his affliction. However, while testifying, defendant presented with various movement and vocal tics. This Court observed defendant repeatedly emit what can only be described as animal-like squeals. Also noted were recurrent, purposeless motor movements. This Court will thus assume that defendant suffered from TS and its related symptom complex during all questioning.

the requisite coercive activity. Defendant's motion to suppress on the grounds that TS rendered all statements obtained involuntary, is thus denied.

## V. CONCLUSION

Accordingly, defendant's motions to suppress evidence on the above noted grounds are DENIED.

IT IS SO ORDERED.