USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1260

 UNITED STATES,

 Appellee,

 v.

 CHARLES PALMER,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF NEW HAMPSHIRE

 [Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

 Before

 Boudin, Circuit Judge,
 
 Bownes, Senior Circuit Judge,
 
 and Lipez, Circuit Judge.
 
 
 
 

 Sven D. Wiberg, with whom Wiberg & Wiberg were on brief for
appellant.

 Jean B. Weld, Assistant United States Attorney, with whom Paul
M. Gagnon, United States Attorney, Peter E. Papps, First Assistant
United States Attorney, Mark E. Howard, Assistant United States
Attorney, and Frank Lopez, Assistant United States Attorney, were
on brief for appellee.

January 14, 2000

 BOWNES, Senior Circuit Judge. Defendant Charles Palmer
was convicted by a jury on three counts of robbery and four counts
of conspiracy to commit robbery under 18 U.S.C. 1951 (1948). 
Four issues are before us, which we list in the order presented in
defendant-appellant's brief: (1) Did some of the prosecutor's
remarks made during final argument violate defendant's due process
rights and deprive him of a fair trial? (2) Did the district
court err in not suppressing defendant's confession to the police? 
(3) Was there sufficient evidence to sustain the conspiracy
counts? (4) Were the district court's instructions to the jury
erroneous in light of the fact that defendant was charged as a
principal in the indictment but the evidence showed that he was an
aider and abettor? We affirm the conviction.
 The background facts are as follows. At the beginning of
February 1998, defendant and a friend, Talbot Curtin, decided to
rob convenience stores to get money to feed their drug habits. 
Defendant was addicted to heroin and Curtin was hooked on crack
cocaine. According to defendant's statement to the police, Curtin
wanted the robberies limited to stores in which a woman was the
sole employee on the premises and there were not many customers.
 The three robbery convictions were of stores in southern
New Hampshire which fit this requirement. The conspiracy
convictions involved other convenience stores in the same area, but
at the time they were "cased," they did not meet the "woman only" 
standard and/or had too many customers. Defendant did not testify.
 Additional facts will be stated in our discussion of the
issues, which follows.
 I.
 THE PROSECUTOR'S COMMENTS
 Palmer claims that his rights to due process,
confrontation, and a fair trial by an impartial jury were violated
when the prosecutor, during closing argument, made reference to his
own personal beliefs and appealed to those of the jury to explain
the witness's decision to record Palmer's confession but not the
entire custodial interrogation. Palmer also claims that the
subsequent jury instruction was neither sufficiently
contemporaneous nor strong enough to overcome the prejudice caused.
 The remarks made by the prosecutor and the colloquy
involved were as follows:
 MR. HOWARD: Now, defense made much in his
 opening and attempted to make much on his
 cross-examination of Detective Sprankle about
 the period of time when the defendant gets to
 the police station and before he's put on
 tape. Couldn't you just have recorded the
 whole darn thing? We know exactly what went
 on. Answer, No, I can't do that. Why? 
 Because if I bring a defendant or a witness or
 anybody else into the room, and I sit him down
 and say, Okay, we're going to talk about
 robbery, and press the button to the
 taperecorder, the first thing that happens,
 they are going to shut up and not going to
 talk. You do it. I do it. The presence of
 the tape 

 MR. WIBERG: Objection.

 THE COURT: Overruled. Sit down. You can put
 it on the record later.

 MR. HOWARD: It's just common sense, that you
 are not going to intimidate somebody with a
 taperecorder right up front. The confession
 comess [sic] out, and Detective Sprankle now
 asks.

 "Will you now put it on the tape?" And he
 voluntarily chooses to do it. Incidentally,
 there's no request for a lawyer. Detective
 Sprankle said that just never happened, and it
 did not happen.

 It is clear that the prosecutor's statement (in support
of a government witness) that he would have acted similarly was
improper: it was a statement of how the prosecutor himself would
have acted on a similar occasion and was, at least, indirectly, a
form of vouching for the witness. But the requisite analysis does
not end with a finding of prosecutorial misconduct. There are
other factors in the equation:
 (1) whether the prosecutor's misconduct was
 isolated and/or deliberate; (2) whether the
 trial court gave a strong and explicit
 cautionary instruction; and (3) whether any
 prejudice surviving the court's instruction
 likely could have affected the outcome of the
 case.

United States v. Auch, 187 F.3d 125, 129 (1st Cir. 1999); see also
United States v. Manning, 23 F.3d 570, 574 (1st Cir. 1994)
(adopting similar factors). We address these factors in the
context of this case. 
 As a one-time misstatement at the end of a four-day
trial, the prosecution's comment was neither so egregious nor so
pervasive as to poison the well. Cf. Manning, 23 F.3d at 575
(several episodes of prosecutorial overreaching were impermissibly
pervasive); see also United States v. Capone, 683 F.2d 582, 585-86
(1st Cir. 1982) (prosecutor's statement that victim, seated in the
audience, awaits the "truth" and the jury verdict, did not call for
a new trial).
 Here, the comment occurred during the middle of the
government's closing argument, not during rebuttal. See Auch, 187
F.3d at 132 (improper comments made during close of rebuttal have
"great potential to cause prejudice"). As an ill-conceived
illustration to support witness testimony, the remark was
peripheral to the government's case and theme. See United States
v. Young, 470 U.S. 1, 12 (1985).
 Palmer argues that the judge's curative instruction,
sandwiched between the government's and defendant's closing
arguments, was insufficient because it did not immediately follow
the misconduct. Though delivered several minutes after the
objection, the judge's thorough comments pointedly addressed the
prosecution's improper remark as well as every other objection
raised by the defense during the sidebar conference. Defense
counsel also objected to the prosecution's characterization of the
elements of conspiracy, the judge's demand that the defense counsel
sit down after making the objection, and the prosecution's
characterization of the evidence.
 The criticized instruction stated:
 THE COURT: Members of the jury, I have some
 interim instructions. Remember, it's my
 obligation to rule on objections, and you are
 not to take my ruling on any objection or the
 manner on which I rule on objections as any
 comment about an attorney's conduct or case. 
 That's strictly a function for me to perform,
 and you are not to concern yourselves with
 that.

 During the course of Mr. Howard's final
 argument, he made reference to the use of a
 tape or a recorder whether it was used or not
 used and that he said something to the effect
 that, You or I wouldn't do that. Remember,
 you decide the case based on evidence in the
 case, not on a prosecutor's opinion, and a
 prosecutor can't vouch for any particular
 opinion or what have you. A prosecutor can
 argue the case, but to the extent he indicated
 he might have done it the same way, that's not
 relevant to your consideration; and indeed, to
 say that you or I would have done it that way
 is irrelevant.

 You have to examine all of the facts that
 you heard in this case and determine it based
 on facts, the law and common sense, how you
 are going to come down on an issue.

 Also remember that the attorneys make final
 arguments to you. They are making an effort
 to be accurate about the facts, the evidence
 as they recall the facts. To the extent,
 however, that you find anything an attorney
 says to you about the facts may differ from
 your own recollection of the facts, then you
 should take your own recollection on facts to
 the extent that anything--occasionally during
 the final arguments, an attorney might make
 reference to the law. To the extent that an
 attorney tells you what he thinks the law is
 may be different from what I'm going to tell
 you what the law is, and you take the law from
 the Court and not from the attorney.

 We find these instructions curatively sufficient and
timely given. The district court has considerable leeway as to the
phrasing and timing of a curative instruction. See United States
v. Moreno, 991 F.2d 943, 948 (1st Cir. 1993) (oblique, but lengthy,
curative instruction sufficient to communicate message that jury is
to ignore recent prosecutor comments). 
 "Finally in appraising possible prejudice we do not
ignore the fact that the case against Moreno was ample." Id. at
948. So here, any lingering prejudicial effect from the misconduct
pales in comparison to the government's evidence implicating
Palmer's involvement in the crimes: a taped confession, supported
by independent corroborating evidence from an eyewitness and a
video surveillance camera.
 II.

 WAS THE DEFENDANT'S CONFESSION
 ERRONEOUSLY ADMITTED?

 On March 20, 1998, the defendant was arrested at his home
by members of the Nashua Police Department, including Detective
Richard Sprankle, pursuant to an arrest warrant for robbery. En
route to the police station, Palmer, who had not been given notice
of his Miranda rights, emphatically and loudly denied any
involvement in the robberies and accused the detectives of lacking
any evidence to demonstrate otherwise. In response, Sprankle
repeatedly told the defendant to shut up, and indicated that the
police had an incriminating confession from Talbot "Timmy" Curtin
implicating Palmer in the robberies. The detective also stated, at
some point and at least once, that Curtin who resided with
Palmer, Palmer's girlfriend and her daughter was a child
molester. For the duration of the car trip, no questions were
asked of the defendant.
 At the police station, the defendant was booked according
to standard operating procedures. Though still not informed of his
Miranda rights, he was instructed by Sprankle to answer nothing
beyond the booking officer's routine questions. After being taken
to an interrogation room, the defendant was told that he could
remain silent if he wanted but that the government had
incriminating statements from Curtin, which the defendant was told
he could listen to after receiving his Miranda warnings.
 Before the Miranda discussion, Sprankle asked the
defendant if he had used any drugs or intoxicants that day. The
defendant replied that he had not. Sprankle then recited the
Miranda rights from a printed waiver form, asked Palmer if he
understood them, and to state his understanding of each right. 
Palmer did so. The defendant was then asked to, and did, initial
the printed version of each right on the waiver form. After this,
the detective read the form's waiver portion. The defendant was
told to read the form, and then asked if he understood it. He was
then asked if he wished to talk and waive his rights, and if he did
to initial the waiver and sign it, which defendant did. Later, at
the beginning of the tape recorded segment of the confession, the
previous waiver process was recounted and Palmer again stated that
he wanted to voluntarily waive his Miranda rights.
 The applicable standard of review is well established. 
In the context of a motion to suppress, a district court's findings
of facts are reviewed for clear error. See United States v.
Marenghi, 109 F.3d 28, 31 (1st Cir. 1997). Where there are two
plausible competing interpretations of the evidence, the district
court's choice of one of them cannot be clearly erroneous. See
United States v. Burns, 15 F.3d 211, 216 (1st Cir. 1994) (quoting
United States v. Cruz Jimenez, 894 F.2d 1, 7 (1st Cir. 1990)). 
District court determinations of questions of law, including those
involving the Constitution are reviewed de novo. See Marenghi, 109
F.3d at 31. The issue of voluntariness is a question of law
subject to plenary review. See United States v. Bienvenue, 632
F.2d 910, 913 (1st Cir. 1980) (requiring appellate court to make
independent determination).
 A defendant may waive his Miranda rights if the waiver is
made voluntarily, knowingly, and intelligently. See Miranda v.
Arizona, 384 U.S. 436, 444 (1966). To determine the voluntariness
of a waiver, it is necessary to look at the totality of the
circumstances, see Arizona v. Fulminante, 499 U.S. 279, 285 (1991),
including "the tactics used by the police, the details of the
interrogation, and any characteristics of the accused that might
cause his will easily to be overborne." United States v. Rohrbach,
813 F.2d 142, 144 (8th Cir. 1987); see also United States v.
Jackson, 918 F.2d 236, 241 (1st Cir. 1990). Though courts must
presume that a defendant did not waive his rights, see Jackson, 918
F.2d at 241, the government may prove a waiver by a preponderance
of the evidence. See Colorado v. Connelly, 479 U.S. 157, 168
(1986).
 The defendant claims that the trial court erred in
admitting his post-arrest statements because his waiver of his
Miranda rights was not made knowingly, voluntarily and
intelligently given the totality of the circumstances. Palmer
points to the following circumstances: he was a heroin addict in
withdrawal and under the influence of anti-depressants at the time
of his interrogation; he was not read the Miranda rights upon
arrest; his request to speak to an attorney was denied; he was a
victim of child molestation; and the police admittedly and
intentionally lied about Talbot "Timmy" Curtin, the defendant's co-
conspirator, being a child molester.
 We begin our analysis by upholding the district court's
finding that defendant did not request an attorney. The trial
court weighed this allegation against Detective Sprankle's
testimony, which denied that any such request was ever made, and
determined the latter to be more credible. The court found support
for its conclusion in the demeanor and candidness of the
detective's testimony and his actions on the night of the
defendant's arrest. See United States v. Palmer, Cr. No. 98-42-01-
JD, slip op. at 9 (D. N.H. July 24, 1998). Where evaluations of
witness credibility are concerned, we are especially deferential to
the district court's judgment. See United States v. Jones, 187
F.3d 210, 214-16 (1st Cir. 1999) (determination that government
testimony, though inconsistent, was credible is not clearly
erroneous). The district court was not required to credit the
appellant's version of the events. See United States v. Budzyna,
666 F.2d 666, 672 (1st Cir. 1981).
 The defendant's claim that the Miranda warnings were
untimely is rejected. In the interim between being arrested and
being Mirandized, the defendant was repeatedly advised to keep
quiet and was not asked any questions. Though the delay of a
Miranda warning may be prejudicial, it was not so here. The trial
court specifically found that the defendant was questioned only
after waiving such rights. It is clear that defendant did not make
any incriminating statements until the warning was read to him,
read by him, and initialed by him.
 Palmer's claim of a weakened physical and mental state
caused by heroin withdrawal and use of Trazadone was also resolved
against him by the district court. Defendant was a heroin addict,
and at the time of the interrogation, he claimed he was suffering
from withdrawal because he had not consumed the amount of heroin
commensurate with his seven-bag-a-day habit. The transcript of the
confession indicates that he felt discomfort because of the effects
of the withdrawal. 
 The district court held that the defendant's mental state
was not deficient based upon the suppression hearing testimony and
the tape recorded confession. On the night of the arrest,
defendant stated that his mind was working properly and he
understood his Miranda rights and his waiver of them. The
detective, who was experienced in identifying substance abusers,
testified that the defendant appeared clear-headed. The trial
court credited the confession, because the defendant's tone,
clarity, and detailed recall of the robberies as set forth in the
confession supported a finding of lucidity. Because he had a
record of sixteen prior arrests, the district court found that
Palmer comprehended the significance of a Miranda waiver. The
court's finding that Palmer intelligently and knowingly waived his
rights had a solid evidentiary basis in his confession statements
and Detective Sprankle's testimony and thus was not clearly
erroneous. See United States v. Crooks, 766 F.2d 7, 11 (1st Cir.
1985) (determination that statement not coerced, given government
denial of threats, has adequate evidentiary support); see also
United States v. Melanson, 691 F.2d 579, 588 (1st Cir. 1981)
(courts should consider the age, experience, education, background,
intelligence, and conduct of the defendant).
 Even if Palmer, arguendo, was in a weakened condition
because of his withdrawal symptoms, it does not necessarily follow
that his post-arrest statements were involuntary. See United
States v. Byrne, 83 F.3d 984, 989 (8th Cir. 1996) (district court
did not err in finding that defendant, after taking the drug
methadone, made voluntary statement). In the context of the
voluntariness of a confession, a defendant's mental state by itself
and apart from its relation to official coercion never disposes of
the inquiry into constitutional voluntariness. See Connelly, 479
U.S. at 164. 
 To establish coercion, Palmer focuses upon Detective
Sprankle's intentional lie that Curtin was a child molester, which
he argues was made because of his own history as a victim of child
sexual abuse. Defendant asserts that such "ploys were the
functional equivalent of interrogation." We disagree. Based upon
the trial court's subsidiary findings of fact, we find the waiver
to have been made free of coercion.
 There is some dispute about when and how often Curtin was
characterized as a child molester, as well as when the defendant
informed the detective that he had been a victim of child
molestation. The detective conceded that the characterization was
a lie, but, denied any knowledge of the defendant's history of
molestation. Detective Sprankle claimed that the lie was intended
to stigmatize Curtin and to break any bond between the
confederates. The district court found that the lie, though
admittedly a ploy, was not done with foreknowledge of the
defendant's history. The court therefore concluded that the
statement was neither coercive nor improperly deceitful. We cannot
set aside this finding of fact as clearly erroneous. We have read
defendant's confession carefully and can find nothing in it to
indicate that the "lie" prompted his statement to the police or
influenced his recital of the facts in any way. We note that the
confessions of both Palmer and Curtin were very similar except that
each of them claimed that he drove the get-away vehicle and the
other one committed the actual robbery. 
 The court also held that the defendant was not threatened
with consequences of failing to speak, nor did the police tactic
create a sense of urgency. We agree with this finding. See
Connelly, 479 U.S. at 170 ("The voluntariness of a waiver of this
privilege has always depended on the absence of police
overreaching, not on 'free choice' in any broader sense of the
word."). We note certain relevant findings of the district court: 
"The officers appeared to be professional and there was no
indication that the officers were rude, abrasive, or forceful. 
Indeed, the taped portion of the interview indicates a very
cooperative relation between the interrogating police and the
defendant." Elsewhere, the court cited the defendant's own taped
admission that his statement was made free of threats or promises. 
 Finally, Palmer argues that the trial judge addressed its
concerns seriatim instead of in combination to determine
voluntariness. He also contends, citing Brewer v. Williams, 430
U.S. 387 (1977), that the court must indulge every presumption
against waiver. If the trial judge relied disproportionately or
solely on a single factor, see Bynzada, 666 F.2d at 672 (signed
waiver form is not conclusive to determine voluntariness of
statement), Palmer might have a meritorious argument. But given
the trial judge's searching, meticulous analysis, there is no basis
for setting aside the finding of voluntariness, especially since
the government clearly met its preponderance burden. 
 After reviewing all the evidence, we do not have a
definite and firm conviction that the district court's
determination that the waiver was voluntarily made was clearly
erroneous. See Jones, 187 F.3d at 214.
 III.
 THE SUFFICIENCY OF THE CONSPIRACY EVIDENCE
 Defendant was charged, under the Hobbs Act, 19 U.S.C.
 1951, with four counts of conspiring with Talbot Curtin to rob
three convenience stores in southern New Hampshire. Count One
charged a conspiracy made on February 4, 1998, to rob Sell's Mobil
Station located at 242 Amherst Street, Nashua, New Hampshire. 
Count Two charged a conspiracy to rob Zaynab Shell Food Mart
located at 160 Broad Street, Nashua, New Hampshire. Count Four
charged a conspiracy to rob the same store described in Count One;
the date for this conspiracy was February 7, 1998. Count Five
charged a conspiracy to rob Jeannotte's Market located at 2
Courtland Street, Nashua, New Hampshire.
 Palmer's defense is straight forward: there was no
evidence of any meeting of the minds to rob the stores listed in
the conspiracy counts. Curtin insisted that they rob only stores
that were serviced by a woman and had no customers at the time of
the robbery. Defendant argues that if there was any agreement it
was that the stores named in the conspiracy counts were not to be
robbed because at the time they were surveilled, they did not meet
Curtin's conditions for committing a robbery.
 Logical as this contention may seem, it founders on the
rocks of legal precedent holding that a condition imposed by the
conspirators upon the carrying out of a conspiracy does not negate
the conspiracy. We view the evidence as to each conspiracy count
through a lens favorable to the verdict. We recited the well-
established standard recently in United States v. Morillo, 158 F.3d
18, 22 (1st Cir. 1998), in which we said:
 We assess the sufficiency of the evidence as a
 whole, including all reasonable inferences, in
 the light most favorable to the verdict, with
 a view to whether a rational trier of fact
 could have found the defendant guilty beyond a
 reasonable doubt. We do not weigh witness
 credibility, but resolve all credibility
 issues in favor of the verdict. The evidence
 may be entirely circumstantial, and need not
 exclude every reasonable hypothesis of
 innocence; that is, the factfinder may decide
 among reasonable interpretations of the
 evidence.

 The evidence as to Count One was that on February 4,
1998, defendant drove Curtin to the described Mobil station
convenience store. The conspirators had agreed to rob the store if
there was only a female clerk on the premises. Curtin was to enter
the store and take the money if this condition was met. The store
was not robbed because the person in charge was a male.
 The same circumstances prevailed as to Count Two. On
February 4, 1998 the same day defendant drove Curtin to the
Shell station described in the count with the intent that Curtin
would rob it, if his predetermined conditions were met. Once
again, Curtin found a male running the store. It was, therefore,
not robbed.
 Count Four is a reprise of Count One, the only difference
being the date of the alleged conspiracy February 7, 1998 three
days later.
 The Count Five conspiracy has a slightly different
factual twist. Defendant drove Curtin to Jeannotte's Market, the
store described in the count. Curtin decided, based on the number
of cars parked in front of the store, that there were too many
people present for the robbery to be carried out.
 In answer to a question during his interrogation by the
police, defendant said that it upset him that Curtin insisted on
robbing only stores clerked by a woman. "Because I feel that if
you're going to do a robbery that [sic] what's the difference male
or female? It's to be, end result is the same. You're stealing
money."
 The gist of conspiracy is an agreement to disobey or to
disregard the law. See United States v. Garcia, 983 F.2d 1160,
1165 (1st Cir. 1993). The government must prove an intent to agree
and an intent to commit the substantive offense. See id. Evidence
of an overt act is not required to establish a Hobbs Act
conspiracy. See United States v. Tormos-Vega, 959 F.2d 1103, 1115
(1st Cir. 1992). A conspiracy may be established through
circumstantial evidence, and the government need only demonstrate
a tacit understanding between the conspirators to prove its case. 
See id. at 1118. Because the essence of a conspiracy is an
agreement, see United States v. Miranda-Ortiz, 926 F.2d 172, 175
(2nd Cir. 1991), a failure to achieve the objective, even if
factually impossible, is not a defense. See United States v. Giry,
818 F.2d 120, 126 (1st Cir. 1987).
 In United States v. Anello, 765 F.2d 253, 262 (1st Cir.
1985), then-Judge Breyer (now Justice Breyer) held that an
agreement to buy marijuana is "for conspiracy purposes an agreement
to buy, at least as long as the potential buyer believes the
condition likely to be fulfilled." 
 Judge Posner in United States v. Podolsky, 798 F.2d 177
(7th Cir. 1986), cited to Anello and then pointed out:
 Every conspiracy is conditional to some
 extent, for no one agrees to go through with
 an agreement no matter what. Conditions,
 express or implied, do not make a contract
 unenforceable; they merely define the
 circumstances in which a party can avoid
 having to perform his contractual obligation;
 they presuppose rather than nullify the
 obligation.

Id. at 178 (citation omitted).

 The doctrine that a condition made by the conspirators
cannot nullify the underlying conspiracy is recognized and applied
across the federal circuits. And defendant has cited no cases to
the contrary. 
 In United States v. Dworken, 855 F.2d 12, 19 (1st Cir.
1988), we suggested that the test for conditional conspiratorial
liability should focus on the likelihood that the condition
precedent will be fulfilled. See Anello, 765 F.2d at 262. 
Liability should attach if the defendant reasonably believed that
the conditions would obtain. See Dworken, 855 F.2d at 19. In this
case, one factor suggesting such reasonable belief is the fact that
the conditions were met in two other cases, and when they were met,
the defendants carried out the robberies.
 First, defendant himself did not think it should make any
difference whether the stores to be robbed were serviced by a woman
or a man. If he were the one committing the robbery instead of his
partner, he might not have followed Curtin's "woman only" rule. In
this connection it is to be noted that in Curtin's statement to the
police, he claimed that defendant actually committed the robberies
and that he (Curtin) drove the getaway vehicle.
 Moreover, whether or not Curtin's rule was followed could 
depend upon how badly the conspirators needed drugs. In the
parlance of the streets, the conspirators were a couple of
"junkies" hooked on heroin and crack-cocaine. They conspired to
rob the stores to feed their habits. They did not follow normal
patterns of behavior. The conditions were self-imposed and could
be ignored by either one of the conspirators or both at their whim
or caprice. The condition was not a bar to the robbers, it was a
self-imposed restraint that could easily be negated.
 The only problem we might have with the conspiracy counts
is charging two conspiracies to rob the same store, Counts One and
Four. Defendant, however, has not raised any specific objection to
this, so under our well-established rule we do not consider it.

 IV.
 THE INDICTMENT AND JURY INSTRUCTIONS
 Defendant argues that the jury instructions on the
substantive counts alone or in combination with the language of the
indictment were so confusing as to deprive him of a fair trial.
 The substantive counts in the indictment, Counts Three,
Six, and Seven, charged that the defendant did commit each robbery
and was "aided and abetted by Talbot Timothy Curtin." The
government proved the opposite: that Curtin committed the
robberies, aided and abetted by defendant who drove the get-away
vehicle. There was no evidence that defendant went into any of the
stores that were robbed and took the money.
 At the close of the government's case, defendant moved to
dismiss because of the difference between the government's proof
and the wording of the substantive counts. During the discussion,
the prosecutor acknowledged that his evidence showed that defendant
was an aider and abettor, not the principal as the indictment
charged. The prosecution argued that under 18 U.S.C. 2(a) it did
not make a difference. The court agreed with the prosecutor and,
relying on our opinion in United States v. Sanchez, 917 F.2d 607
(1st Cir. 1990), denied defendant's motion to dismiss.
 We now examine the jury instructions. The court read the 
substantive counts of the indictment verbatim. He then explained
the pertinent provisions of 18 U.S.C. 1951. He then stated: 
 Under the law, a person can be held
 responsible for a crime if he directly
 committed the crime himself, or if he aids,
 abets, counsels, commands, induces or procures
 another to commit. 

The court read the provisions of 18 U.S.C. 2(a) to the jury. The
court then instructed:
 With respect to Counts 3, 6, and 7, the
 government contends that the defendant aided
 and abetted Talbot Curtain [sic] in committing
 the robberies alleged in these Counts. There
 are three material elements of the offense of
 aiding and abetting the commission of a crime,
 each of which the government must prove beyond
 a reasonable doubt with respect to each of 
 Counts 3, 6 and 7 in order for you to find the
 defendant guilty.

 First, that the defendant knew that robbery
 was to be committed or was being committed by
 Talbot Curtain [sic]; second, that the
 defendant knowingly did some act for the
 purpose of aiding the commission of that
 crime; and third, that the defendant acted
 with the intention of causing the crime
 charged to be committed.

 The aiding and abetting statute, it is not
 necessary for the government to show that the
 defendant himself physically committed the
 crime charged. A person who aids and abets
 another to commit an offense is just as guilty
 of the offense as if that person had actually
 committed it alone. Accordingly, you may find
 a defendant guilty of a robbery if you find
 beyond a reasonable doubt that Talbot Curtain
 [sic] actually committed the robbery with
 which the defendant is charged and that the
 defendant aided and abetted Talbot Curtain
 [sic] in the commission of that robbery or
 caused the robbery to be committed by Talbot
 Curtain [sic]. 

 In order to aid, abet or cause another to
 commit a crime, it is necessary that the
 defendant knowingly and wilfully associate
 himself in some way with the crime and that
 the defendant knowingly and wilfully seek by
 some act to help to make the crime succeed.

 The indictment was sent to the jury. The jurors were
given a copy of the jury instructions prior to the charge. The
judge advised them that they could read them as he gave the
instructions.
 After the jury advised the court that it had reached a
verdict and returned to the courtroom, the clerk asked: "How does
the jury find the defendant Charles Palmer, not guilty or guilty as
to" each count in the indictment? The jury found defendant guilty
on all counts. 
 We agree with the district court that Sanchez, 917 F.2d
at 607, controls. In Sanchez, the conspiracy count did not charge
defendant with aiding and abetting. Nevertheless, the district
court charged the jury that defendants could be convicted if they
aided and abetted the substantive offense of possessing cocaine
with intent to distribute. Defendant Sanchez claimed that the
instruction "violated his sixth amendment right to be informed of
the nature and cause of the accusation against him." Id. at 611
(internal quotation marks omitted).
 After a thorough canvass of the pertinent cases from
other circuits, we held:
 The contention falls, especially because
 "aiding and abetting" is not a separate
 offense. United States v. Thirion, 813 F.2d
 146, 151 (8th Cir. 1987); United States v.
 McKnight, 799 F.2d 443, 445 (8th Cir. 1986);
 see also United States v. Moya-Gomez, 860 F.2d
 706, 756 (7th Cir. 1988). Title 18 United
 States Code, section 2, "simply makes those
 who aid and abet in a crime punishable as
 principals." Thirion, 813 F.2d at 151
 (quoting McKnight, 799 F.2d at 445). Aiding
 and abetting is "an alternative charge in
 every . . . count, whether explicit or
 implicit." McKnight, 799 F.2d at 445 (quoting
 United States v. Walker, 621 F.2d 163, 166
 (5th Cir. 1980)). Accord United States v.
 Bullock, 451 F.2d 884, 888 (5th Cir. 1971);
 United States v. Lester, 363 F.2d 68, 72 (6th
 Cir. 1966). A defendant can be convicted of
 aiding and abetting the commission of a
 substantive offense "upon a proper
 demonstration of proof so long as no unfair
 surprise results." United States v. Galiffa,
 734 F.2d 306, 312 (7th Cir. 1984); accord
 United States v. Tucker, 552 F.2d 202, 204
 (7th Cir. 1977).
Sanchez, 917 F.2d at 611.
 If a defendant can be convicted of aiding and abetting
without being so charged in the indictment, we cannot find that
defendant here was deprived of a fair trial because he was
convicted of being an aider and abettor, even though charged as the
principal, when the evidence established beyond a reasonable doubt
that he drove the get-away vehicle while his partner-in-crime
committed the robberies charged. There might be cases in which the
language of the indictment so misleads a defendant so as to
prejudice an effective defense, but this is not such a case.
 The judgment of the district court is affirmed.