UNITED STATES, Appellee,

v.

Charles PALMER, Defendant,
Appellant.

No. 99–1260.

United States Court of Appeals,
First Circuit.

Heard Nov. 3, 1999.

Decided Jan. 14, 2000.

Rehearing and Suggestion for Rehearing
En Banc Denied Feb. 22, 2000.

Sven D. Wiberg, with whom Wiberg & Wiberg were on brief for appellant.

Jean B. Weld, Assistant United States Attorney, with whom Paul M. Gagnon, United States Attorney, Peter E. Papps, First Assistant United States Attorney, Mark E. Howard, Assistant United States Attorney, and Frank Lopez, Assistant United States Attorney, were on brief for appellee.

Before BOUDIN, Circuit Judge, BOWNES, Senior Circuit Judge, and LIPEZ, Circuit Judge.

BOWNES, Senior Circuit Judge.

Defendant Charles Palmer was convicted by a jury on three counts of robbery and four counts of conspiracy to commit robbery under 18 U.S.C. § 1951 (1948).[1] Four issues are before us, which we list in the order presented in defendant-appellant's brief: (1) Did some of the prosecutor's remarks made during final argument violate defendant's due process rights and deprive him of a fair trial? (2) Did the district court err in not suppressing defendant's confession to the police? (3) Was there sufficient evidence to sustain the conspiracy counts? (4) Were the district court's instructions to the jury erroneous in light of the fact that defendant was charged as a principal in the indictment but the evidence showed that he was an aider and abettor? We affirm the conviction.

The background facts are as follows. At the beginning of February 1998, defendant and a friend, Talbot Curtin, decided to rob convenience stores to get money to feed their drug habits. Defendant was addicted to heroin and Curtin was hooked on crack cocaine. According to defendant's statement to the police, Curtin wanted the robberies limited to stores in which a woman was the sole employee on the premises and there were not many customers.

The three robbery convictions were of stores in southern New Hampshire which fit this requirement. The conspiracy convictions involved other convenience stores in the same area, but at the time they were "cased," they did not meet the "woman only" standard and/or had too many customers. Defendant did not testify.

Additional facts will be stated in our discussion of the issues, which follows.

1. An eighth count charging only defendant with robbery on October 21, 1997, was sev-ered before trial on the other counts and ultimately dismissed.

## I.

### THE PROSECUTOR'S COMMENTS

■ Palmer claims that his rights to due process, confrontation, and a fair trial by an impartial jury were violated when the prosecutor, during closing argument, made reference to his own personal beliefs and appealed to those of the jury to explain the witness's decision to record Palmer's confession but not the entire custodial interrogation. Palmer also claims that the subsequent jury instruction was neither sufficiently contemporaneous nor strong enough to overcome the prejudice caused.

The remarks made by the prosecutor and the colloquy involved were as follows:

MR. HOWARD: Now, defense made much in his opening and attempted to make much on his cross-examination of Detective Sprankle about the period of time when the defendant gets to the police station and before he's put on tape. Couldn't you just have recorded the whole darn thing? We know exactly what went on. Answer, No, I can't do that. Why? Because if I bring a defendant or a witness or anybody else into the room, and I sit him down and say, Okay, we're going to talk about robbery, and press the button to the taperecorder, the first thing that happens, they are going to shut up and not going to talk. *You do it. I do it.* The presence of the tape–

MR. WIBERG: Objection.

THE COURT: Overruled. Sit down. You can put it on the record later.

MR. HOWARD: It's just common sense, that you are not going to intimidate somebody with a taperecorder right up front. The confession comess [sic] out, and Detective Sprankle now asks. "Will you now put it on the tape?" And he voluntarily chooses to do it. Incidentally, there's no request for a lawyer. Detective Sprankle said that just never happened, and it did not happen.

■ It is clear that the prosecutor's statement (in support of a government witness) that he would have acted similarly was improper: it was a statement of how the prosecutor himself would have acted on a similar occasion and was, at least, indirectly, a form of vouching for the witness. But the requisite analysis does not end with a finding of prosecutorial misconduct. There are other factors in the equation:

(1) whether the prosecutor's misconduct was isolated and/or deliberate; (2) whether the trial court gave a strong and explicit cautionary instruction; and (3) whether any prejudice surviving the court's instruction likely could have affected the outcome of the case.

*United States v. Auch,* 187 F.3d 125, 129 (1st Cir.1999); *see also United States v. Manning,* 23 F.3d 570, 574 (1st Cir.1994) (adopting similar factors). We address these factors in the context of this case.

As a one-time misstatement at the end of a four-day trial, the prosecution's comment was neither so egregious nor so pervasive as to poison the well. *Cf. Manning,* 23 F.3d at 575 (several episodes of prosecutorial overreaching were impermissibly pervasive); *see also United States v. Capone,* 683 F.2d 582, 585–86 (1st Cir.1982) (prosecutor's statement that victim, seated in the audience, awaits the "truth" and the jury verdict, did not call for a new trial).

Here, the comment occurred during the middle of the government's closing argument, not during rebuttal. *See Auch,* 187 F.3d at 132 (improper comments made during close of rebuttal have "great potential to cause prejudice"). As an ill-conceived illustration to support witness testimony, the remark was peripheral to the government's case and theme. *See United States v. Young,* 470 U.S. 1, 12, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

Palmer argues that the judge's curative instruction, sandwiched between the government's and defendant's closing arguments, was insufficient because it did not

immediately follow the misconduct. Though delivered several minutes after the objection, the judge's thorough comments pointedly addressed the prosecution's improper remark as well as every other objection raised by the defense during the sidebar conference. Defense counsel also objected to the prosecution's characterization of the elements of conspiracy, the judge's demand that the defense counsel sit down after making the objection, and the prosecution's characterization of the evidence.

The criticized instruction stated:

THE COURT: Members of the jury, I have some interim instructions. Remember, it's my obligation to rule on objections, and you are not to take my ruling on any objection or the manner on which I rule on objections as any comment about an attorney's conduct or case. That's strictly a function for me to perform, and you are not to concern yourselves with that.

During the course of Mr. Howard's final argument, he made reference to the use of a tape or a recorder whether it was used or not used and that he said something to the effect that, You or I wouldn't do that. Remember, you decide the case based on evidence in the case, not on a prosecutor's opinion, and a prosecutor can't vouch for any particular opinion or what have you. A prosecutor can argue the case, but to the extent he indicated he might have done it the same way, that's not relevant to your consideration; and indeed, to say that you or I would have done it that way is irrelevant.

You have to examine all of the facts that you heard in this case and determine it based on facts, the law and common sense, how you are going to come down on an issue.

Also remember that the attorneys make final arguments to you. They are making an effort to be accurate about the facts, the evidence as they recall the facts. To the extent, however, that you find anything an attorney says to you about the facts may differ from your own recollection of the facts, then you should take your own recollection on facts to the extent that anything—occasionally during the final arguments, an attorney might make reference to the law. To the extent that an attorney tells you what he thinks the law is may be different from what I'm going to tell you what the law is, and you take the law from the Court and not from the attorney.

We find these instructions curatively sufficient and timely given. The district court has considerable leeway as to the phrasing and timing of a curative instruction. *See United States v. Moreno*, 991 F.2d 943, 948 (1st Cir.1993) (oblique, but lengthy, curative instruction sufficient to communicate message that jury is to ignore recent prosecutor comments).

"Finally in appraising possible prejudice we do not ignore the fact that the case against Moreno was ample." *Id.* at 948. So here, any lingering prejudicial effect from the misconduct pales in comparison to the government's evidence implicating Palmer's involvement in the crimes: a taped confession, supported by independent corroborating evidence from an eyewitness and a video surveillance camera.

## II.

### *WAS THE DEFENDANT'S CONFESSION ERRONEOUSLY ADMITTED?*

On March 20, 1998, the defendant was arrested at his home by members of the Nashua Police Department, including Detective Richard Sprankle, pursuant to an arrest warrant for robbery. En route to the police station, Palmer, who had not been given notice of his *Miranda* rights, emphatically and loudly denied any involvement in the robberies and accused the detectives of lacking any evidence to demonstrate otherwise. In response,

Sprankle repeatedly told the defendant to shut up, and indicated that the police had an incriminating confession from Talbot "Timmy" Curtin implicating Palmer in the robberies. The detective also stated, at some point and at least once, that Curtin—who resided with Palmer, Palmer's girlfriend and her daughter—was a child molester. For the duration of the car trip, no questions were asked of the defendant.

At the police station, the defendant was booked according to standard operating procedures. Though still not informed of his *Miranda* rights, he was instructed by Sprankle to answer nothing beyond the booking officer's routine questions. After being taken to an interrogation room, the defendant was told that he could remain silent if he wanted but that the government had incriminating statements from Curtin, which the defendant was told he could listen to after receiving his *Miranda* warnings.

Before the *Miranda* discussion, Sprankle asked the defendant if he had used any drugs or intoxicants that day. The defendant replied that he had not. Sprankle then recited the *Miranda* rights from a printed waiver form, asked Palmer if he understood them, and to state his understanding of each right. Palmer did so. The defendant was then asked to, and did, initial the printed version of each right on the waiver form. After this, the detective read the form's waiver portion. The defendant was told to read the form, and then asked if he understood it. He was then asked if he wished to talk and waive his rights, and if he did to initial the waiver and sign it, which defendant did. Later, at the beginning of the tape recorded segment of the confession, the previous waiver process was recounted and Palmer again stated that he wanted to voluntarily waive his *Miranda* rights.

 The applicable standard of review is well established. In the context of a motion to suppress, a district court's findings of facts are reviewed for clear error. *See United States v. Marenghi*, 109 F.3d 28, 31 (1st Cir.1997). Where there are two plausible competing interpretations of the evidence, the district court's choice of one of them cannot be clearly erroneous. *See United States v. Burns*, 15 F.3d 211, 216 (1st Cir.1994) (quoting *United ed States v. Cruz Jimenez*, 894 F.2d 1, 7 (1st Cir.1990)). District court determinations of questions of law, including those involving the Constitution are reviewed de novo. *See Marenghi*, 109 F.3d at 31. The issue of voluntariness is a question of law subject to plenary review. *See United States v. Bienvenue*, 632 F.2d 910, 913 (1st Cir.1980) (requiring appellate court to make independent determination).

 A defendant may waive his *Miranda* rights if the waiver is made voluntarily, knowingly, and intelligently. *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). To determine the voluntariness of a waiver, it is necessary to look at the totality of the circumstances, *see Arizona v. Fulminante*, 499 U.S. 279, 285, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), including "the tactics used by the police, the details of the interrogation, and any characteristics of the accused that might cause his will easily to be overborne." *United States v. Rohrbach*, 813 F.2d 142, 144 (8th Cir.1987); *see also United States v. Jackson*, 918 F.2d 236, 241 (1st Cir.1990). Though courts must presume that a defendant did not waive his rights, *see Jackson*, 918 F.2d at 241, the government may prove a waiver by a preponderance of the evidence. *See Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

The defendant claims that the trial court erred in admitting his post-arrest statements because his waiver of his *Miranda* rights was not made knowingly, voluntarily and intelligently given the totality of the circumstances. Palmer points to the following circumstances: he was a heroin addict in withdrawal and under the influence of anti-depressants at the time of his interrogation; he was not read the *Mi-*

*randa* rights upon arrest; his request to speak to an attorney was denied; he was a victim of child molestation; and the police admittedly and intentionally lied about Talbot "Timmy" Curtin, the defendant's co-conspirator, being a child molester.

We begin our analysis by upholding the district court's finding that defendant did not request an attorney. The trial court weighed this allegation against Detective Sprankle's testimony, which denied that any such request was ever made, and determined the latter to be more credible. The court found support for its conclusion in the demeanor and candidness of the detective's testimony and his actions on the night of the defendant's arrest. *See United States v. Palmer*, Cr. No. 98–42–01–JD, slip op. at 9 (D.N.H. July 24, 1998). Where evaluations of witness credibility are concerned, we are especially deferential to the district court's judgment. *See United States v. Jones*, 187 F.3d 210, 214–16 (1st Cir.1999) (determination that government testimony, though inconsistent, was credible is not clearly erroneous). The district court was not required to credit the appellant's version of the events. *See United States v. Budzyna*, 666 F.2d 666, 672 (1st Cir.1981).

The defendant's claim that the *Miranda* warnings were untimely is rejected. In the interim between being arrested and being Mirandized, the defendant was repeatedly advised to keep quiet and was not asked any questions. Though the delay of a *Miranda* warning may be prejudicial, it was not so here. The trial court specifically found that the defendant was questioned only *after* waiving such rights. It is clear that defendant did not make any incriminating statements until the warning was read to him, read by him, and initialed by him.

Palmer's claim of a weakened physical and mental state caused by heroin withdrawal and use of Trazadone was also resolved against him by the district court. Defendant was a heroin addict, and at the time of the interrogation, he claimed he was suffering from withdrawal because he had not consumed the amount of heroin commensurate with his seven-bag-a-day habit. The transcript of the confession indicates that he felt discomfort because of the effects of the withdrawal.

The district court held that the defendant's mental state was not deficient based upon the suppression hearing testimony and the tape recorded confession. On the night of the arrest, defendant stated that his mind was working properly and he understood his *Miranda* rights and his waiver of them. The detective, who was experienced in identifying substance abusers, testified that the defendant appeared clear-headed. The trial court credited the confession, because the defendant's tone, clarity, and detailed recall of the robberies as set forth in the confession supported a finding of lucidity. Because he had a record of sixteen prior arrests, the district court found that Palmer comprehended the significance of a *Miranda* waiver. The court's finding that Palmer intelligently and knowingly waived his rights had a solid evidentiary basis in his confession statements and Detective Sprankle's testimony and thus was not clearly erroneous. *See United States v. Crooks*, 766 F.2d 7, 11 (1st Cir.1985) (determination that statement not coerced, given government denial of threats, has adequate evidentiary support); *see also United States v. Melanson*, 691 F.2d 579, 588 (1st Cir.1981) (courts should consider the age, experience, education, background, intelligence, and conduct of the defendant).

Even if Palmer, *arguendo*, was in a weakened condition because of his withdrawal symptoms, it does not necessarily follow that his post-arrest statements were involuntary. *See United States v. Byrne*, 83 F.3d 984, 989 (8th Cir.1996) (district court did not err in finding that defendant, after taking the drug methadone, made voluntary statement). In the context of the voluntariness of a confession, a defendant's mental state by itself and apart

from its relation to official coercion never disposes of the inquiry into constitutional voluntariness. *See Connelly,* 479 U.S. at 164, 107 S.Ct. 515.

To establish coercion, Palmer focuses upon Detective Sprankle's intentional lie that Curtin was a child molester, which he argues was made because of his own history as a victim of child sexual abuse. Defendant asserts that such "ploys were the functional equivalent of interrogation." We disagree. Based upon the trial court's subsidiary findings of fact, we find the waiver to have been made free of coercion.

There is some dispute about when and how often Curtin was characterized as a child molester, as well as when the defendant informed the detective that he had been a victim of child molestation. The detective conceded that the characterization was a lie, but, denied any knowledge of the defendant's history of molestation. Detective Sprankle claimed that the lie was intended to stigmatize Curtin and to break any bond between the confederates. The district court found that the lie, though admittedly a ploy, was not done with foreknowledge of the defendant's history. The court therefore concluded that the statement was neither coercive nor improperly deceitful. We cannot set aside this finding of fact as clearly erroneous. We have read defendant's confession carefully and can find nothing in it to indicate that the "lie" prompted his statement to the police or influenced his recital of the facts in any way. We note that the confessions of both Palmer and Curtin were very similar except that each of them claimed that he drove the get-away vehicle and the other one committed the actual robbery.

The court also held that the defendant was not threatened with consequences of failing to speak, nor did the police tactic create a sense of urgency. We agree with this finding. *See Connelly,* 479 U.S. at 170, 107 S.Ct. 515 ("The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word."). We note certain relevant findings of the district court: "The officers appeared to be professional and there was no indication that the officers were rude, abrasive, or forceful. Indeed, the taped portion of the interview indicates a very cooperative relation between the interrogating police and the defendant." Elsewhere, the court cited the defendant's own taped admission that his statement was made free of threats or promises.

Finally, Palmer argues that the trial judge addressed its concerns *seriatim* instead of in combination to determine voluntariness. He also contends, citing *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), that the court must indulge every presumption against waiver. If the trial judge relied disproportionately or solely on a single factor, see *Budzyna,* 666 F.2d at 672 (signed waiver form is not conclusive to determine voluntariness of statement), Palmer might have a meritorious argument. But given the trial judge's searching, meticulous analysis, there is no basis for setting aside the finding of voluntariness, especially since the government clearly met its preponderance burden.

After reviewing all the evidence, we do not have a definite and firm conviction that the district court's determination that the waiver was voluntarily made was clearly erroneous. *See Jones,* 187 F.3d at 214.

## III.

### *THE SUFFICIENCY OF THE CONSPIRACY EVIDENCE*

Defendant was charged, under the Hobbs Act, 18 U.S.C. § 1951, with four counts of conspiring with Talbot Curtin to rob three convenience stores in southern New Hampshire. Count One charged a conspiracy made on February 4, 1998, to rob Sell's Mobil Station located at 242 Amherst Street, Nashua, New Hampshire. Count Two charged a conspiracy to rob Zaynab Shell Food Mart located at 160

Broad Street, Nashua, New Hampshire. Count Four charged a conspiracy to rob the same store described in Count One; the date for this conspiracy was February 7, 1998. Count Five charged a conspiracy to rob Jeannotte's Market located at 2 Courtland Street, Nashua, New Hampshire.[2]

 Palmer's defense is straight forward: there was no evidence of any meeting of the minds to rob the stores listed in the conspiracy counts. Curtin insisted that they rob only stores that were serviced by a woman and had no customers at the time of the robbery. Defendant argues that if there was any agreement it was that the stores named in the conspiracy counts were not to be robbed because at the time they were surveilled, they did not meet Curtin's conditions for committing a robbery.

 Logical as this contention may seem, it founders on the rocks of legal precedent holding that a condition imposed by the conspirators upon the carrying out of a conspiracy does not negate the conspiracy. We view the evidence as to each conspiracy count through a lens favorable to the verdict. We recited the well-established standard recently in *United States v. Morillo*, 158 F.3d 18, 22 (1st Cir.1998), in which we said:

> We assess the sufficiency of the evidence as a whole, including all reasonable inferences, in the light most favorable to the verdict, with a view to whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. We do not weigh witness credibility, but resolve all credibility issues in favor of the verdict. The evidence may be entirely circumstantial, and need not exclude every reasonable hypothesis of innocence; that is, the factfinder may decide among reasonable interpretations of the evidence.

2. Counts Three, Six and Seven charged the commission of robberies by the defendant and

The evidence as to Count One was that on February 4, 1998, defendant drove Curtin to the described Mobil station convenience store. The conspirators had agreed to rob the store if there was only a female clerk on the premises. Curtin was to enter the store and take the money if this condition was met. The store was not robbed because the person in charge was a male.

The same circumstances prevailed as to Count Two. On February 4, 1998—the same day—defendant drove Curtin to the Shell station described in the count with the intent that Curtin would rob it, if his predetermined conditions were met. Once again, Curtin found a male running the store. It was, therefore, not robbed.

Count Four is a reprise of Count One, the only difference being the date of the alleged conspiracy—February 7, 1998— three days later.

The Count Five conspiracy has a slightly different factual twist. Defendant drove Curtin to Jeannotte's Market, the store described in the count. Curtin decided, based on the number of cars parked in front of the store, that there were too many people present for the robbery to be carried out.

In answer to a question during his interrogation by the police, defendant said that it upset him that Curtin insisted on robbing only stores clerked by a woman. "Because I feel that if you're going to do a robbery that [sic] what's the difference male or female? It's to be, end result is the same. You're stealing money."

 The gist of conspiracy is an agreement to disobey or to disregard the law. *See United States v. Garcia*, 983 F.2d 1160, 1165 (1st Cir.1993). The government must prove an intent to agree and an intent to commit the substantive offense. *See id.* Evidence of an overt act is not required to establish a Hobbs Act con-

Curtin. *See infra* Part IV.

spiracy. *See United States v. Tormos–Vega,* 959 F.2d 1103, 1115 (1st Cir.1992). A conspiracy may be established through circumstantial evidence, and the government need only demonstrate a tacit understanding between the conspirators to prove its case. *See id.* at 1118. Because the essence of a conspiracy is an agreement, *see United States v. Miranda–Ortiz,* 926 F.2d 172, 175 (2nd Cir.1991), a failure to achieve the objective, even if factually impossible, is not a defense. *See United States v. Giry,* 818 F.2d 120, 126 (1st Cir. 1987).

In *United States v. Anello,* 765 F.2d 253, 262 (1st Cir.1985), then-Judge Breyer (now Justice Breyer) held that an agreement to buy marijuana is "for conspiracy purposes an agreement to buy, at least as long as the potential buyer believes the condition likely to be fulfilled."

Judge Posner in *United States v. Podolsky,* 798 F.2d 177 (7th Cir.1986), cited to *Anello* and then pointed out:

> Every conspiracy is conditional to some extent, for no one agrees to go through with an agreement no matter what. Conditions, express or implied, do not make a contract unenforceable; they merely define the circumstances in which a party can avoid having to perform his contractual obligation; they presuppose rather than nullify the obligation.

*Id.* at 178 (citation omitted).

The doctrine that a condition made by the conspirators cannot nullify the underlying conspiracy is recognized and applied across the federal circuits.[3] And defendant has cited no cases to the contrary.

In *United States v. Dworken,* 855 F.2d 12, 19 (1st Cir.1988), we suggested that the test for conditional conspiratorial liability should focus on the likelihood that the condition precedent will be fulfilled. *See Anello,* 765 F.2d at 262. Liability should attach if the defendant reasonably believed that the conditions would obtain. *See Dworken,* 855 F.2d at 19. In this case, one factor suggesting such reasonable belief is the fact that the conditions *were* met in two other cases, and when they were met, the defendants carried out the robberies.

First, defendant himself did not think it should make any difference whether the stores to be robbed were serviced by a woman or a man. If he were the one committing the robbery instead of his partner, he might not have followed Curtin's "woman only" rule. In this connection it is to be noted that in Curtin's statement to the police, he claimed that defendant actually committed the robberies and that he (Curtin) drove the getaway vehicle.

Moreover, whether or not Curtin's rule was followed could depend upon how badly the conspirators needed drugs. In the parlance of the streets, the conspirators were a couple of "junkies" hooked on heroin and crack-cocaine. They conspired to rob the stores to feed their habits. They did not follow normal patterns of behavior. The conditions were self-imposed and could be ignored by either one of the conspirators or both at their whim or caprice. The condition was not a bar to the robbers, it was a self-imposed restraint that could easily be negated.

---

3. For additional applications of the conditional conspiracy doctrine, *see United States v. Brown,* 946 F.2d 58, 61 (8th Cir.1991) (drug conspiracy conviction upheld even though defendant offered to buy only drugs of satisfactory quality); *United States v. Prince,* 883 F.2d 953, 959 (11th Cir.1989) (drug conspiracy conviction upheld where defendant rejected prospective purchase because the marijuana did not satisfy express condition of seedless-

ness); *United States v. Schultz,* 855 F.2d 1217, 1221 (6th Cir.1988) (drug conspiracy conviction upheld despite failure to complete sale based on disagreement over proper method of shipment); *see also United States v. Grassi,* 616 F.2d 1295, 1301 (5th Cir.1980) (upholding conviction where conspiracy was conditioned on conspirators satisfaction that they were not dealing with undercover police officers).

The only problem we might have with the conspiracy counts is charging two conspiracies to rob the same store, Counts One and Four. Defendant, however, has not raised any specific objection to this, so under our well-established rule we do not consider it.

## IV.

### THE INDICTMENT AND JURY INSTRUCTIONS

Defendant argues that the jury instructions on the substantive counts alone or in combination with the language of the indictment were so confusing as to deprive him of a fair trial.

The substantive counts in the indictment, Counts Three, Six, and Seven, charged that the defendant did commit each robbery and was "aided and abetted by Talbot Timothy Curtin." The government proved the opposite: that Curtin committed the robberies, aided and abetted by defendant who drove the get-away vehicle. There was no evidence that defendant went into any of the stores that were robbed and took the money.

At the close of the government's case, defendant moved to dismiss because of the difference between the government's proof and the wording of the substantive counts. During the discussion, the prosecutor acknowledged that his evidence showed that defendant was an aider and abettor, not the principal as the indictment charged. The prosecution argued that under 18 U.S.C. § 2(a) it did not make a difference.[4] The court agreed with the prosecutor and, relying on our opinion in *United States v. Sanchez,* 917 F.2d 607 (1st Cir.1990), denied defendant's motion to dismiss.

We now examine the jury instructions. The court read the substantive counts of the indictment verbatim. He then explained the pertinent provisions of 18 U.S.C. § 1951. He then stated:

Under the law, a person can be held responsible for a crime if he directly committed the crime himself, or if he aids, abets, counsels, commands, induces or procures another to commit.

The court read the provisions of 18 U.S.C. § 2(a) to the jury. The court then instructed:

With respect to Counts 3, 6, and 7, the government contends that the defendant aided and abetted Talbot Curtain [sic] in committing the robberies alleged in these Counts. There are three material elements of the offense of aiding and abetting the commission of a crime, each of which the government must prove beyond a reasonable doubt with respect to each of Counts 3, 6 and 7 in order for you to find the defendant guilty.

First, that the defendant knew that robbery was to be committed or was being committed by Talbot Curtain [sic]; second, that the defendant knowingly did some act for the purpose of aiding the commission of that crime; and third, that the defendant acted with the intention of causing the crime charged to be committed.

The aiding and abetting statute, it is not necessary for the government to show that the defendant himself physically committed the crime charged. A person who aids and abets another to commit an offense is just as guilty of the offense as if that person had actually committed it alone. Accordingly, you may find a defendant guilty of a robbery if you find beyond a reasonable doubt that Talbot Curtain [sic] actually committed the robbery with which the defendant is charged and that the defendant aided and abetted Talbot Curtain [sic] in the commission of that robbery or caused the robbery to be committed by Talbot Curtain [sic].

---

4. 18 U.S.C. § 2(a):

 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

In order to aid, abet or cause another to commit a crime, it is necessary that the defendant knowingly and wilfully associate himself in some way with the crime and that the defendant knowingly and wilfully seek by some act to help to make the crime succeed.

The indictment was sent to the jury. The jurors were given a copy of the jury instructions prior to the charge. The judge advised them that they could read them as he gave the instructions.

After the jury advised the court that it had reached a verdict and returned to the courtroom, the clerk asked: "How does the jury find the defendant Charles Palmer, not guilty or guilty as to" each count in the indictment? The jury found defendant guilty on all counts.

We agree with the district court that *Sanchez*, 917 F.2d at 607, controls. In *Sanchez*, the conspiracy count did not charge defendant with aiding and abetting. Nevertheless, the district court charged the jury that defendants could be convicted if they aided and abetted the substantive offense of possessing cocaine with intent to distribute. Defendant Sanchez claimed that the instruction "violated his sixth amendment right to be informed of the nature and cause of the accusation against him." *Id.* at 611 (internal quotation marks omitted).

After a thorough canvass of the pertinent cases from other circuits, we held:

The contention falls, especially because "aiding and abetting" is not a separate offense. *United States v. Thirion*, 813 F.2d 146, 151 (8th Cir.1987); *United States v. McKnight*, 799 F.2d 443, 445 (8th Cir.1986); *see also United States v. Moya–Gomez*, 860 F.2d 706, 756 (7th Cir.1988). Title 18 United States Code, section 2, "simply makes those who aid and abet in a crime punishable as principals." *Thirion*, 813 F.2d at 151 (*quoting McKnight*, 799 F.2d at 445). Aiding and abetting is "an alternative charge in every ... count, whether explicit or implicit." *McKnight*, 799 F.2d at 445 (*quoting United States v. Walker*, 621 F.2d 163, 166 (5th Cir.1980)). *Accord United States v. Bullock*, 451 F.2d 884, 888 (5th Cir.1971); *United States v. Lester*, 363 F.2d 68, 72 (6th Cir.1966). A defendant can be convicted of aiding and abetting the commission of a substantive offense "upon a proper demonstration of proof so long as no unfair surprise results." *United States v. Galiffa*, 734 F.2d 306, 312 (7th Cir.1984); *accord United States v. Tucker*, 552 F.2d 202, 204 (7th Cir.1977).

*Sanchez*, 917 F.2d at 611.

If a defendant can be convicted of aiding and abetting without being so charged in the indictment, we cannot find that defendant here was deprived of a fair trial because he was convicted of being an aider and abettor, even though charged as the principal, when the evidence established beyond a reasonable doubt that he drove the get-away vehicle while his partner-in-crime committed the robberies charged. There might be cases in which the language of the indictment so misleads a defendant so as to prejudice an effective defense, but this is not such a case.

The judgment of the district court is *affirmed.*