[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This habeas petition was filed on June 7, 2000, by the petitioner claiming that Conn. Gen. Stat. § 54-125a(b) as amended by Public Act, 1995 No. 95-255 § 1 (hereinafter the "Act") is ex post facto
and, therefore, unconstitutional. The relief she seeks is that she be considered eligible for parole after serving 50% of her pre-July 1, 1996 sentences (Docket Nos. CR96-149301, CR96-60510, CR96-59770, CR96-59771, and CR96-59772), rather than having to wait until she has served 85% of her sentences. Petitioner challenges the application of P.A. 95-255 to the sentences imposed for her 1996 offenses.
Based upon the stipulation of the parties and mittimuses attached thereto, the petitioner's original dates of petitioner's offenses as stated on her mittimuses were January 16, 1996, April 14, 1996, December 26, 1995, February 23, 1996, and December 31, 1995, all of which were prior to the effective date of P.A. 95-255 § 1. In accordance with this Court's recent ruling in the cases of Gus Woods, Jazrael King andMiguel Rentas a copy of which decision is attached hereto, the Court finds that the above mentioned statute as amended by the above mentioned public act as applied to the petitioner in this case is a violation of theex post facto clause of the Constitution of the United States,Article 1, § 10. The Act is a criminal and penal statute that applies to offenses occurring before July 1, 1996, its effective date, and operates to create a significant risk of increased punishment for those offenses. Although the court considers requiring prisoners to serve 85% of their sentence to be a laudable goal, as always our state laws must function within the bounds of the Constitution of the United States. The Act is unconstitutional beyond a reasonable doubt as applied to this petitioner, as to her pre-July 1, 1996 sentences, which must be calculated CT Page 4097 for the purpose of parole eligibility under the law in effect prior to July 1, 1996.
Accordingly, the petitioner's writ of habeas corpus is granted, and the Court orders the warden to recalculate his parole eligibility date in accordance with General Statutes Section 54-125a(b) as it existed at the time the offenses occurred, with respect to each sentence. The parties stipulate and this Court finds petitioner's parole eligibility date should be November 20 2001. Further, the Board of Parole is ordered not to restrict itself to a mandatory minimum service of 85% of petitioner's pre-July 1, 1996 sentences as provided by the Act in determining his eligibility for parole.
Rittenband, JTR
NO: CV 99-587087 S : SUPERIOR COURT
GUS WOODS : JUDICIAL DISTRICT OF HARTFORD
VS. : AT HARTFORD
WARDEN : SEPTEMBER 13, 2000
**********
NO: CV 99-589071 S : SUPERIOR COURT
JAZRAHEL KING : JUDICIAL DISTRICT OF HARTFORD
VS. : AT HARTFORD
WARDEN : SEPTEMBER 13, 2000
**********
NO: CV 98-800389 S : SUPERIOR COURT
MIGUEL RENTAS : JUDICIAL DISTRICT OF HARTFORD
VS. : AT HARTFORD
WARDEN : SEPTEMBER 13, 2000
 MEMORANDUM OF DECISION
Presently before the Court is a consolidation of three writs of habeas CT Page 4098 corpus involving three different petitioners all presenting the same issue of an alleged ex post facto application of General Statutes §54-125a (b) as amended by Public Act 1995, No. 95-255, § 1, commonly known as the Truth in Sentencing Act. Essentially, the petitioners claim that the application of P.A. 95-255, § 1 ("Act") to individuals who commmit specified offenses prior to its effective date is a violation of the ex post facto clause of the United States Constitution,Article 1, §10, which states, inter-alia: "No State shall. . . . pass any Bill of Attainder, ex Post facto Law, or. . . ."
 FACTS Public Act 95-255, § 1, increased the Percentage of time that a person convicted of specified crimes must serve of his definite sentence from fifty percent to eighty-five percent. The pertinent language of § 1 is as follows: "A person convicted of an offense, other than an offense specified in subdivision (1) of this subsection, where the underlying facts and circumstances of the offense involve the use, attempted use or threatened use of physical force against another person shall be ineligible for parole under subsection (a) of this section until such person has served not less than eighty five per cent of the definite sentence imposed." The effective date for § 1 of the Act was July 1,1996. Each of the three writs of habeas corpus allege that the petitioner committed the crimes with which he was charged prior to the effective date of P.A. 95-255, § 1 and convicted after its effective date. Each petitioner seeks application to them of General Statutes § 54-125a (b) in its prior enactment, thus requiring the petitioners to serve only fifty percent of their definite sentence. They further allege that the Board of Parole ("Parole Board" or "Board") violated the ex post facto clause of the United States Constitution by applying the Act to these petitioners. The petitioners claim that, as applied to them, the Act retroactively increases their sentences because under the prior version of § 54-125a (b) they would be eligible for a parole hearing and, thus, the possibility of parole, much sooner.
In Woods v. Warden, Superior Court, Judicial District of Hartford, Docket No. 587087, the Court, committed the petitioner, Gus Woods, to the custody of the Commissioner of Correction to a total effective sentence of twenty years. Woods pleaded guilty on November 21, 1997 to violations of General Statutes § 53a-55 (a)(3), manslaughter in the first degree, and General Statutes § 53-21, risk of injury to a minor. Woods committed both offenses on September 30, 1995. In January 1998, pursuant to the Act, the Parole Board determined that Woods was ineligible for parole until he completed eighty-five percent of his definite sentence. The Parole Board calculated Woods' parole eligibility date to be October 1, 2012. Woods claims that by applying the fifty percent CT Page 4099 statute, his parole eligibility date would be October 1, 2005, seven years sooner than by application of the eighty-five percent rule.
In King v. Warden, Superior Court, Judicial District of Hartford, Docket No. 589071, the Court committed the petitioner, Jazrahel King, to the custody of the Commissioner of Corrections to a total effective sentence of twenty-five years execution suspended after 11 years. On November 18, 1997, King pleaded guilty, pursuant to a plea bargain, to violations of the General Statutes § 53a-55 (a)(3), manslaughter in the first degree, and General Statutes § 53a-59 (a)(5), assault in the first degree. The date of both offenses was April 30, 1996. As with Woods, the Parole Board applied the Act to King and concluded that King would not be eligible for a parole hearing until more than nine years of the eleven year sentence had been served. If the Parole Board applied the fifty percent law in effect at the time of King's offense date, he would be eligible for parole almost four years sooner.
In Rentas v. Warden, Superior Court, Judicial District of Hartford, Docket No. 800389,[1] the petitioner, Miguel Rentas, accepted a plea agreement on November 6, 1996, whereby in exchange for his guilty plea under the Alford[2] doctrine, he received a total effective sentence of twenty years execution suspended after twelve years with five years probation. The agreement involved the disposition of four separate docket numbers with Alford pleas to four counts of robbery in the first degree, in violation of General Statutes § 53a-134 and two counts of conspiracy to commit robbery in the first degree, in violation of General Statutes § 53a-48. All of the offenses to which Rentas pleaded guiltyoccurred on or before January 15, 1996. The Parole Board also applied the Act to Rentas moving his eligibility for a parole hearing from six years, under the previous version of the law, to approximately ten years.
 SUMMARY
DATE OF OFFENSE DATE OF CONVICTION
Woods September 30, 1995 November 21, 1997 King April 30, 1996 November 18, 1997 Rentas January 15, 1996 November 6, 1996
 STANDARD OF REVIEW
"The States are prohibited from enacting an ex post facto law.U.S. Const., Art. I, § 10, cl. 1. One function of the Ex Post Facto Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission. Collins v. Youngblood,497 U.S. 37, 42 (1990) (citing Beazell v. Ohio, 269 U.S. 167, 169-170
CT Page 4100 (1925)). Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept. See Lynce v. Mathis,519 U.S. 433, 445-446, [117 S.Ct. 960, 137 L.Ed.2d 63 (1997)] (citingWeaver v. Graham, 450 U.S. 24, 32, 101 S.Ct. 960, 67 L.Ed.2d 17, (1981)); [California Dept. of Corrections v. Morales, 514 U.S. 499,508-09, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995).] Whether retroactive application of a particular change in parole law respects the prohibition on ex post facto legislation is often a question of particular difficulty when the discretion vested in a parole board is taken into account." (Emphasis in original.) Garner v. Jones, 529 U.S. ___, 120 S.Ct. 1362,1367, 146 L.Ed.2d 236 (2000). "In challenging the constitutionality of a statute, the defendant bears the heavy burden of establishing beyond a reasonable doubt that the statute is in fact unconstitutional. State v.Hernandez, 204 Conn. 377, 385, 528 A.2d 794 (1987)." State v. Branham,56 Conn. App. 395, 400, 743 A.2d 635, cert. denied, 252 Conn. 937,747 A.2d 3 (2000).
"In order to invoke the trial court's subject matter jurisdiction in a habeas action, a petitioner must allege that he is illegally confined or has been deprived of his liberty. Our Supreme Court found that [t]he writ of habeas corpus, as it is employed in the twentieth century, however, does not focus solely upon a direct attack on the underlying judgment or upon release from confinement; Lozada v. Warden, 223 Conn. 834, 841-842,613 A.2d 818 (1992); but is available as a remedy for issues of fundamental fairness implicating constitutional rights. Id., 840; see also Arey v. Warden, 187 Conn. 324, 445 A.2d 916 (1982) (claims concerning conditions of confinement may be brought in habeas corpus proceeding)." (Internal quotation marks omitted.) Santiago v. Commissionerof Correction, 39 Conn. App. 674, 679, 667 A.2d 304 (1995).
The petitioners allege that they committed the offenses with which they were charged prior to the effective date of the Act and that its application to the petitioners is violative of the ex post facto clause of the United States Constitution. The petitioners also allege that the Act is being applied retrospectively and that it will result in an increase in their sentences. These are sufficient allegations to invoke the subject matter jurisdiction of the court. See General Statutes §52-466, and U.S. ex rel. Swanson v. Reineke, 344 F.2d 269 (2nd Circuit) (1965).
 ISSUES
PLAIN MEANING OF THE ACT:
The petitioners urge the court to adopt the United States Supreme Court's reasoning in Johnson v. United States, 529 U.S. ___, 120 S.Ct. CT Page 4101 1795, 146 L.Ed.2d 727 (2000), wherein the court construed a supervised release statute to avoid an ex post facto challenge. The petitioners contend that there is no indication from the language of the Act or its legislative history that the legislature intended the Act to apply retroactively and therefore the Act should be construed to apply only to individuals who commit offenses after July 1, 1996. The respondent argues that the language of the statute unambiguously applies to all convictions that fall within the defined class, including the petitioners' convictions, that occurred on or after July 1, 1996. Moreover, the respondent claims that the legislative history supports the position that the legislature intended the law to apply to all individuals convicted as of July 1, 1996.
In Johnson v. United States, supra, 120 S.Ct. 1795, the district court sentenced the petitioner to twenty-five months in prison followed by three years of supervised release for the commission of a felony. After serving seventeen months of his sentence, the petitioner was released and he began serving his three year term of supervised release. While on supervised release, the petitioner was convicted of violations of state forgery laws. The district court revoked the petitioner's supervised release and sentenced him to eighteen months in prison to be followed by another term of supervised release. The district court did not identify its authority to impose an additional period of supervised release following the imprisonment for the violation of the petitioner's conditions of release, but there was a federal statute in effect that provided the court with the proper authority. The date of the petitioner's original offense, however, was prior to the effective date of that statute. The case required the Supreme Court to decide whether the statute could be applied to the petitioner without implicating the ex post facto clause. The Supreme Court determined that there was no ex post facto issue, to be decided because the legislative history of the statute in question did not clearly evince an intent to apply the statute retroactively. The Court stated that "[s]ince postrevocation penalties relate to the original offense, to sentence [the petitioner] to a further term of supervised release under § 3583(h) would be to apply this section retroactively (and to raise the remaining ex post facto question, whether that application makes him worse off). But before any such application (and constitutional test), there is a question that neither party addresses. . . . [T]here is the question whether Congress intended such application. Absent a clear statement of that intent, we "do not give retroactive effect to statutes burdening private interests."Johnson v. United States, supra, 120 S.Ct. 1801. After concluding that Congress did not intend retroactive application, the Supreme Court then decided the issue on other grounds.
Despite the petitioners' claim that the court should construe the Act CT Page 4102 to avoid any ex post facto problems, the legislature used the term "conviction." "[A] basic tenet of statutory construction is that when a statute . . . is clear and unambiguous, there is no room for construction. . . ." (Internal quotation marks omitted.) Gural v.Fazzino, 45 Conn. App. 586, 588, 696 A.2d 1307 (1997). In order for the statute to be applied retroactively to the petitioners, it would have to be applied as it was in State v. Robinson, Superior Court, judicial district of New Haven at New Haven, Docket No. 405187 (January 7, 1999, DeMayo, J.). In Robinson, the petitioner committed and pled guilty to (was convicted of)[3] the offense prior to the effective date of the Act. The Board applied the eighty-five percent rule to the petitioner based on his sentencing date. The court, DeMayo, J., held that the application of the law violated the ex Post facto clause.[4] In the present cases, however, all of the petitioners were convicted of their offenses after the effective date of the Act: Therefore, the application of the word "conviction" of the Act to the petitioners is not retroactive, and the court will not construe the statute otherwise in light of the plain language of the statute that specifies "conviction"
which in these cases all occurred after the effective date of the Act (July 1, 1996).
 IS THE ACT PENAL?
"[I]n an ex post facto analysis, a court must first determine whether the challenged law is a penal statute, and, if not, whether the law is so punitive in fact as to render it penal despite its intent. [T]he fact that the Act may be "tied to criminal activity' is "insufficient to render the [statute] punitive. Kansas v. Hendricks, supra, 117 S.Ct. 2082. Only unmistakable evidence of punitive intent will suffice to render a statute punitive. Fleming v. Nestor, 363 U.S. 603, 619, 80 S.Ct. 1367,4 L.Ed.2d 1435
(1960). [W]hether a sanction intended as regulatory or nonpunitive is `so punitive in fact' as to violate the ex post facto prohibition is a highly context specific matter. Doe v. Pataki, 120 F.3d 1263, 1275 (2d Cir. 1997). Doe v. Pataki, supra, is in sharp contrast to the case at bar. The Second Circuit held that registration as a sex offender was not sufficient punishment to violate the ex post facto law although it would be otherwise ex post facto. It also stated in effect that additional incarceration is punishment per se. ". . . although some "effects', for instance, prolonged incarceration in a correctional facility may in andof themselves be sufficient to render a sanction punitive for purposes ofthe ex post facto inquiry regardless of the legislature's intent . . ." Id. 1279. Emphasis added. Further, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty. Hudson v. United States,___ U.S. ___, 118 S.Ct. 488,493, 139 L.Ed.2d 450 (1997)." (Internal quotation marks omitted.) Beasley v. Commissioner of Correction, 50 Conn. App. 421, CT Page 4103 431-32, 718 A.2d 487 (1998), aff'd, 249 Conn. 499, 733 A.2d 833 (1999).
The Court begins by noting that P.A. 95-255 amends General Statutes § 54-125a, which is located in Title 54, the criminal procedure title. The court also notes that the Act is entitled "AN ACT CONCERNING TRUTH IN SENTENCING." The Act amended General Statutes § 54-125a to increase, from fifty percent to eighty-five percent, the minimum amount of time that certain violent offenders would spend incarcerated. It appears from its placement in the General Statutes, the Act's title and its effect on a class of offenders that the act is a criminal and penal statute. This determination, however, is also supported by the legislative history.
During testimony in front of the judiciary committee, the Chief State's Attorney, John Bailey, testified concerning Senate Bill 927, which becameP.A. 95-255, that "with this truth in sentencing bill we are earmarking the people we want to keep in, and that is the violent offenders, the A and B, the robbery one, the sexual assault one, burglary one and those C felons who are selling drug[s] around our schools, who are bringing terrorism to our schools, those are the ones who will be doing eighty five percent." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 8, 1995 Sess., p. 2573. In his comments to the judiciary committee, Tom Siconolfi,[5] from the Office of Policy and Management, testified that the Act "would require that criminals who commit violent offenses serve at least eighty five percent of their sentence behind bars before they would be eligible for parole release. . . . We think it is honest and proportionate punishment for offenders who are the greatest threat to public safety." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 10, 1995 Sess., p. 3568. Furthermore, Senator Kissel speaking in support of the Act stated that "the citizens of the State of Connecticut understand that career criminals know the ins and outs of the system, and so what we want to do here in the State of Connecticut, is we want to send a very clear signal that we are not going to continue to do business as we have done in the past. We are going to make those financial sacrifices, which mean that people are going to do more of the time that is imposed by a court, and that that is important to us as a society. Because we want our judicial system, and our corrections system to be a deterrent to crime." 38 5. Proc., Pt. 8, 1995 Sess., p. 2873. Finally, Representative Lawlor, in support of an amendment to the proposed legislation, indicated that "I think if this bill becomes, law, the message should go out loudly and clearly, violent offenders . . . will do eighty five percent of their sentence. That is why the citizens of this state invested in all the prison capacity. . . . Those prisons are for the violent offenders. They should do their whole sentence. No ifs, and's or but's. . . ." 38 H.R. Proc., Pt. 12, 1995 Sess., p. 4209.
CT Page 4104
The remarks of Senator Kissel and Representative Lawlor go directly to the deterrent effect of the proposed legislation. Moreover, the respondent in his pretrial brief acknowledges that the "legislature rationally attempted to protect the public from violent offenders and increase deterrence by remedying the past practice of: the Department of Correction. . . ." (Respondent's Pretrial Brief, p. 27.) Deterrence is one of the primary goals of criminal law.[6] See State v. Goffe,41 Conn. App. 454, 462, 676 A.2d 1377 (1996). Furthermore, although not determinative, the effect that the Act has on a particular inmate is linked to his prior criminal behavior.
The respondent also maintains that there is a civil purpose for the Act, namely protection of the public safety. "The legislature's sole intent [in passing the Act] was to protect the public from violent offenders such as the petitioner[s], and to reduce child abuse and violence against children in our communities." (Respondent's Pretrial Brief, p. 25.) The respondent makes this statement without a cite to the legislative history. There is no support in the legislative history that this was a public safety measure. The focus of the legislators was inincreasing the amount of time served. Public safety may be an incidental consequence of the enactment but it was not the primary focus. A statute, this Act, clearly intended to keep people in prison for a longer period of time is intended as and must be treated as a criminal/penal statute. Further, by any objective standard, comparing the present statute with the statute in effect at the time the crimes were committed makes it clear that the present statute amounts to an increase in punishment. See Lynce v. Mathis, 117 S.Ct. 891, 896, 897 (1997) and Weaverv. Graham, 450 U.S. 24, 30, 101 S.Ct. 960, 965 (1981). Based upon the foregoing analysis, it is clear that P.A. 95-255 was intended to be and is a criminal and penal statute.
 DATE OF OFFENSE OR DATE OF CONVICTION
"In criminal cases, to determine whether a change in the law applies to a defendant, we generally have applied the law in existence on the date of the offense, regardless of its procedural or substantive nature. See, e.g., State v. Ross, 230 Conn. 183, 283, 646 A.2d 1318 (1994), cert. denied, 513 U.S. 1165, 115 S.Ct. 1133, 130 L.Ed.2d 1095 (1995) (relying on date of offense in retroactivity analysis of change in law ultimately found to be procedural); State v. Jones, 132 Conn. 682, 684-85, 47 A.2d 185
(1946) (application of statute requiring court in certain pending cases to order examination of defendant for venereal disease, enacted after date of offense but prior to arrest, would impermissibly give it retroactive effect); see also State v. Millhouse, 3 Conn. App. 497, 501,490 A.2d 517 (1985) (in construing penal statute to determine whether application is retroactive, date of crime controls)." In re Daniel H.,
CT Page 4105237 Conn. 364, 377, 678 A.2d 462 (1996). The Act itself makes parole ineligibility dependent upon the underlying facts and circumstances of the offense (whether it is violent).
By using the conviction date in applying the Act to the petitioners, the Board is at cross purposes with the policy reasons behind requiring the use of the offense date in criminal statutes "Critical to relief under the Ex Post Facto Clause is . . . the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Weaver v. Graham,450 U.S. 24, 30-31, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). Furthermore, the United States Supreme Court has stated that the ex post facto clause was "aimed at a second concern, namely, that legislative enactments give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed. . . . Thus, almost from the outset, we have recognized that central to the ex post facto prohibition is a concern for the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." (Citations omitted; internal quotation marks omitted.)Miller v. Florida, 482 U.S. 423, 430, 1075 S.Ct. 2446, 96 L.Ed.2d 577
(1987). "There is plainly a fundamental fairness interest, even apart for any claim of reliance or notice, in having the government abide by the rules of law it establishes to govern the circumstances under which it can deprive a person of his or her liberty or life." Carmell v. Texas,529 U.S. ___, 129 S.Ct. 162Q, 1633, 146 L.Ed.2d 577 (2000) citing Calderv. Bull, 3 Dall 386, 390, 1 L.Ed. 648 (1798) in which the Supreme Court,Chase, J. set forth three categories of ex post facto laws. "3d. Every law that changes the punishment and inflicts a greater punishment than the law annexed to the crime when committed . . . and those making an existing punishment more severe." Id. 1627, 1628 and see footnote #11. Emphasis added.
In the present cases, all of the petitioners committed their offenses prior to the effective date of the statute. The law in effect at the time of their offenses required them to serve a minimum of fifty percent of their definite sentences. By applying the eighty-five percent rule to the petitioners, after they committed the crimes, the Board is depriving the petitioners of fair notice of the effect of the statutes that they violated. Furthermore, the petitioners were entitled to rely on the law in existence on the date of their offenses. The application of the Act based on the date of conviction undermines the petitioners' right to rely on the law in existence at the time the offenses were committed.[7]
Respondent claims petitioners were on notice of the 85% requirement when sentenced. However, at that time they had no choice but to plead guilty or to go to trial which under the facts of the cases herein was no choice at all. If a petitioner knew of the 85% requirement when he was about to CT Page 4106 commit the crime, he had a choice not to commit it fully aware of the consequences. It is the date of the offense when he should have had notice, not the date of the plea.
 DOES THE ACT INCREASE THE PETITIONERS' PUNISHMENT?
"The final step in an ex post facto analysis is to determine whether the effect of the newly enacted law increases the amount of the punishment imposed for the crime's commission." Beasley v. Commissioner ofCorrection, supra, 50 Conn. App. 432-33. Specifically, the question is whether the Act "as applied to [the petitioners' sentences] . . . created a significant risk of increasing his punishment." Garner v. Jones,
supra, 120 S.Ct. 1370. The petitioners claim that the Act by removing the Board's discretion, to consider an inmate for parole until serving eighty-five percent of his sentence creates a significant risk of increasing their punishment. The respondent contends that there cannot be a significant risk of increasing the petitioners' punishment because parole is completely discretionary, and the Parole Board had the authority to require the petitioners to serve eighty-five percent of their sentence even on the day they committed their offenses. Furthermore, the respondent claims that even if the Act creates a generalized risk of longer incarceration for violent offenders, the petitioners, individually, cannot show that they would have been paroled anytime prior to serving eighty-five percent of their definite sentence because the Parole Board is vested with discretion to determine parole eligibility.Weaver v. Graham, supra, states that statutes that retroactively alter access to parole eligibility increase punishment. 450 U.S. 24 at 31. See also Rodriguez v. United States Parole Comm'n, 594 F.2d 170 (1979) cited in Weaver at page 31.
The respondent also relies on Johnson v. United States, supra,120 S.Ct. 1795, to support his argument there cannot be an increased punishment because the Board always had the discretion to require the petitioners to serve eighty-five percent of their sentence. The Supreme Court in Johnson construed a sentencing statute in such a way to avoid an ex post facto challenge. In order to determine whether the district court sentenced the petitioner illegally, the court examined the statute in effect at the time the petitioner was originally sentenced. The court ultimately determined that the district court properly imposed a new period of supervised release after a violation of the original supervised release. The Court stated that "[t]he case turns . . . simply on whether [the statute in effect at the date of the offense] permitted imposition of supervised release following a recommitment." Id., 1802.
While it may be true that the district court had the authority to impose the challenged sentence, it derived that authority from the CT Page 4107 statutes in effect on the date of the petitioner's offense. First, it is informative that the Supreme Court decided in Johnson that it wasnecessary to apply the law in effect at the time of the offense to avoidan ex post facto violation. This is precisely the relief sought by the petitioners, the application of the statute in effect on the date of their offenses. Furthermore, the decision in Johnson does not stand for the proposition that a violation of the ex post facto clause is irrelevant if there is a legal means to accomplish the same result. The Supreme Court determined that there would be a violation of the ex post facto clause if the statute was applied retrospectively, and, therefore, looked to the law in effect on the date of the petitioner's offense. The practical implications of the decision in Johnson as applied to the present petitioners would result in their becoming eligible for a parole hearing after serving fifty percent of their definite sentence instead of eighty-five percent. Taking away the Board's discretion by mandating eighty-five percent service of a sentence when the Board wants to release the prisoner earlier is an increase in punishment. Although the Board may decide not to exercise its discretion, it is now prohibited from doing so.
The respondent also relies on Abed v. commissioner of Correction,43 Conn. App. 176, 682 A.2d 558, cert. denied, 239 Conn. 937, 684 A.2d 707
(1996), Abed v. Commissioner of Correction, 203 F.3d 63 (2d Cir. 2000), and Beasley v. Commissioner of Correction, supra, 50 Conn. App. 421, to support his contention that discretionary parole cannot be increased punishment because the petitioners are not entitled to it at all. One of the issues presented in these cases was whether an administrative directive restricting eligibility for statutory good time, pursuant to General Statutes 18-7a (c), for certain classifications of inmates would violate the ex post facto clause of the United States constitution. In each of these cases, the court rejected the petitioners' ex post facto claims because (1) the Department of Correction applied the directive only to conduct occurring after the effective date of the administrative policy and (2) the directives were not penal but were intended to help manage the inmate population and (3) the award of good time credits was discretionary.
These decisions are inapposite to the petitioners' cases. First, this Court has already determined that the statute in question was intended as, and is, a penal statute. Furthermore, the Act is applied based on conduct that occurred prior to its adoption. Finally, whether or not to permit an inmate the privilege of parole may be a matter of discretion, but, that discretion is not unfettered. The Board must operate within the bounds established by General Statutes § 54-125a. The Board must apply the eighty-five percent rule to all prisoners who qualify as violent offenders who are convicted on or after July 1, 1996. There is no CT Page 4108 discretion vested with the Parole Board to release specific violent offenders until the eighty-five percent minimum is reached.
The amount of discretion vested with the Parole Board was the determining factor in two United States Supreme Court cases involving ex post facto challenges to parole systems. In California Dept. ofCorrections v. Morales, 514 U.S. 499, 508-09, 115 S.Ct. 1597,131 L.Ed.2d 588 (1995), there was an ex post facto challenge to a California statute. The statute permitted the Parole Board to restrict the availability of parole hearings for prisoners convicted of two homicides "if the Board finds that it is not reasonable to expect that parole would be granted at a hearing during the following years and states the bases for the finding." (Internal quotation marks omitted.) Id., 503. The petitioner, a double murderer, would have been eligible for parole hearings annually if the rule had not changed after his conviction. The Supreme Court determined that the statute did not offend the ex post facto clause because "[f]irst, the amendment applies only to a class of prisoners for whom the likelihood of release on parole is quite remote . . . [s]econd . . . [t]he amendment has no effect on the date of any prisoner's initial parole suitability hearing; it affects the timing only of subsequent hearings . . . [m]oreover, the Board retains the authority to tailor the frequency of subsequent suitability hearings to the particular circumstances of the individual prisoner." (Citations omitted; emphasis omitted.) Id., 510-11.
In Garner v. Jones, supra, 120 S.Ct. 1362, the respondent committed murder after escaping from prison where he was serving a life sentence for another murder. At the time the second murder was committed Georgia law required that, after an initial denial of parole, reconsideration for parole take place every three years. After the respondent began serving his second life sentence the parole board amended its rules. The new rule permitted the Parole Board to extend an inmate's parole eligibility hearing to a maximum of eight years if there was not a reasonable chance the inmate would be released. Depending on the circumstances of each individual case, the Board policies permitted it to set an earlier date for parole eligibility or advance an inmate's parole eligibility based on changed circumstances. The court stated that "our analysis rests upon the premise that the Board exercises its discretion in accordance with its assessment of each inmate's likelihood of release between reconsideration dates. If the assessment later turns out not to hold true for particular inmates, they may invoke the policy the Parole Board has adopted to permit expedited consideration in the event of a change in circumstances."Garner v. Jones, supra, 120 S.Ct. 1370.
The decisions in Garner and Morales demonstrate the significance of discretion in defeating an ex post facto challenge to a parole statute CT Page 4109 that alters the parole scheme after the date of the petitioner's offense.[8] The court in Garner discussing Morales stated that:
"The amended California law did not violate [the ex post facto] standard. It did not modify the statutory punishment imposed for any particular offenses. Nor did the amendment alter the standards for determining either the initial date for parole eligibility or an inmate's suitability for parole. . . . The amendment did not change the basicstructure of California's parole law. It vested the California paroleboard with discretion to decrease the frequency with which itreconsidered parole for a limited class, consisting of prisonersconvicted of more than one homicide. . . . If the board determined a low likelihood of release existed for a member within that class, it could set the prisoner's next consideration date three years hence. The change in California law did not, however, prohibit requests for earlier reconsideration based on a change of' circumstances. . . ." (Citations omitted.) Garner v. Jones, supra, 120 S.Ct. 1367-68. Emphasis added. Incontrast, P.A. 95-255 does not grant to the Parole Board the discretionto release individuals on parole prior to the completion of eighty-fivepercent of their sentence.[9] Moreover, and perhaps most important, is the fact that the new parole scheme as applied to these petitioners results in a new initial parole eligibility date without an individual finding that "it is not reasonable to expect that parole would be granted at a hearing during the following years and states the bases for the finding." California Dept. of Corrections v. Morales, supra, 514 U.S. 503.
Consider, hypothetically, a person who commits a violent crime under the fifty percent statute and is convicted under the eighty-five percent statute. As applied in the present case under the Act he would be classified as a violent offender and would be subject to the eighty-five percent rule. This is true even if while serving his sentence the medical condition (i.e. a brain tumor) that caused him to commit the violent crime in the first place is cured. This person who would no longer be a threat to the public or himself would, nevertheless, be required to serve the full eighty-five percent of his sentence because his ability to apply for parole was postponed until he completed an additional thirty-five percent of his sentence. The Act prohibits the Board from exercising its discretion to release him before eighty-five percent of his sentence is served despite this substantial change in circumstances which might otherwise result in an earlier release date. If the fifty percent rule is applied to this individual, then at fifty percent there is a significant possibility that he will be paroled. The application of the eighty-five percent rule results in a thirty-five percent longer sentence for the individual. The thirty-five percent increase demonstrates the "significant risk of increasing his punishment." Garner v. Jones, supra,120 S.Ct. 1370. Without the proper discretion, the increased risk of CT Page 4110 punishment is applicable equally to the hypothetical prisoner as well as to the petitioners.
Whether these petitioners will be likely to be released prior to 85% service of their sentences is both irrelevant and speculative. Since the Act is invalid being ex post facto, these petitioners are entitled to a parole hearing after serving 50% of their sentence no matter how unlikely their prospects of release, and the Board of Parole should not beprohibited from granting them a hearing and release after serving 50% of their sentence which prohibition is part of the Act. ". . . the detriment requirement is met even if the defendant before us cannot show definitively that he would have gotten a lesser sentence." Nulph v.Faatz, 27 F.3d 451, 455, 456 (9th Circuit, 1994) citing Miller v.Florida, 482 U.S. 423, 432; 107 S.Ct at 2452 (citations omitted). "See also Chapman, 754 F.2d at 1535. ("The inquiry looks to the challenged provision and not to any special circumstances that may mitigate its effect on the particular individual"). Also, in Miller, supra, the Court stated: "Respondent maintains that the change in guidelines laws is not disadvantageous because Petitioner "cannot show definitively that he would have gotten a lesser sentence'. Tr. of Oral Arg. 29. This argument, however, is foreclosed by our decision in Lindsey v.Washington, 301 U.S. 397, 57 S.Ct 797, 81 L.Ed 1182 (1937)." Miller v.Florida, 107 S.Ct at 2452. The Act itself by its very terms poses a significant risk of increased punishment.
As noted earlier, the Board in Garner had discretion to alter the parole scheme on an individual basis as assessed by the Board in terms of likelihood of release. The Supreme Court stated: "When the rule does not by its own terms show a significant risk, the [petitioners] must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule." Id., 1370. Because the Board in Garner had discretion to review inmates individually, the petitioner in that case was required to show that "as applied to his own sentence the law created a significant risk of increasing his punishment." Id., 1370. Vesting the Board with a certain amount of discretion permits them to reconsider individual circumstances and creates a situation where there is "only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes." CaliforniaDept. of Corrections v. Morales, supra, 514 U.S. 509. The presentsituation is unlike that in Garner because the Connecticut Board lacks asimilar discretion. The respondent contends that the petitioners would not be able to prove that they would have been paroled and thus are not entitled to relief. Under Garner, the petitioners do not have to show that they actually would be paroled if given a parole hearing after CT Page 4111 serving fifty percent of their sentence. As the Connecticut Board has nodiscretion, the petitioners only have to show that the Act causes "asignificant risk of increasing (their] punishment." Garner v. Jones,supra, 120 S.Ct. 1370. By applying P.A. 95-255 there is a significant risk of increasing the punishment, from fifty to eighty-five percent of their definite sentence.
The respondent claims that the petitions are not "ripe" for decision. The Court rejects this claim. Habeas relief is not limited to immediate release. See Peyton v. Rowe, 391 U.S. 54 (1968); Brayden v. 30th JudicialCircuit Court of Kentucky, 410 U.S. 484, 488, 499 (1972) and Preiser v.Rodriguez, 411 U.S. 475, 483 (1973).
The respondent also likens the statute to a rule of prison administration. The respondent argues that prison administrators should be granted a certain amount of flexibility in conducting the state's prison system. In support of this proposition, the respondent relies primarily on Turner v. Sagely, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64
(1987). Turner involved a class action seeking injunctive relief and damages for alleged unconstitutional prison regulations. One of the regulations restricted correspondence between inmates and the other regulation required that an inmate get the prior permission of the superintendent of the prison before he could marry. The court held that the prison regulations were valid provided that the regulation was "reasonably related to legitimate penological interests." Id., 89. The court justified this broader standards stating: "Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." Id., 89. The respondent contends that the standard in Turner "applies to all circumstances in which the needs of prison administration implicate constitutional rights." Washington v. Harper,494 U.S. 210, 224, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990).
The court agrees that prison administrators should be accorded a certain amount of flexibility in conducting the state's prison system. The court, however, is faced in the present case with distinguishable circumstances. In contrast to Turner, the court, in the present case, is faced with a claim of an ex post facto statute that potentially alters the length of time an individual is incarcerated. The court is not presented with a challenge to an allegedly unconstitutional prison regulation that relates to the day-to-day administration of the prison system. This is not a situation where prison officers by regulation or policy are attempting to regulate current prison life. Furthermore, the prison policy, in Washington v. Harper, supra, 494 U.S. 210, was challenged on due process grounds and therefore the precedential value of CT Page 4112 its ruling to an ex post facto challenge is not clear. With regard tothese petitioners, the Act attempts to burden a right that relates to actions taken prior to their incarceration. The proper standard in ex post facto analysis is whether "the law [the petitioners challenge] operates retroactively (that it applies to conduct completed before its enactment) and [whether] it raises the penalty from whatever the law provided when [they] acted." Johnson v. United States, supra,120 S.Ct. 1800.
General Statutes § 54-125a (b) as amended by Public Act 1995, No. 95-255, § 1, as applied to the petitioners in this consolidated case is a violation of the ex post facto clause of theConstitution of the United States, article 1, § 10. The Act is a criminal and penal statute that applies to offenses occurring before July 1, 1996, its effective date, and operates to create a significant risk of increased punishment for those offenses. Although the court considers requiring prisoners to serve eighty-five percent of their sentence to be a laudable goal,[10] as always our state laws must function within the bounds of the Constitution of the United States. The Act is unconstitutional beyond a reasonable doubt as applied to these petitioners.
Accordingly, the petitioners' writs of habeas corpus are granted, and the Court orders the warden to recalculate their parole eligibility date in accordance with General Statutes § 54-125a (b) as it existed at the time the offenses occurred. Further, the Board of Parole is ordered not to restrict itself to a mandatory minimum service of eighty-five percent of their sentences as provided by the Act in determining their eligibility for parole.
Rittenband, JTR